Terry E. RUGAN

v.

The DOLE COMPANY and CNA
Insurance Company.

Supreme Judicial Court of Maine.

Argued Jan. 7, 1981.

Decided May 20, 1981.

McTeague, Higbee & Tierney, Patrick N.
McTeague, Brunswick (orally), for plaintiff.

* Glassman, J., sat at oral argument and in the
initial conference but died prior to adoption of
this opinion.

Mitchell & Stearns, Peter M. Weatherbee,
Bangor (orally), for defendant.

Before WERNICK, GODFREY, NICH-
OLS, GLASSMAN * and ROBERTS, JJ.

GODFREY, Justice.

The employee, Terry E. Rugan, appeals
from a pro forma judgment of the Superior
Court affirming a Workers' Compensation
Commission decree partially granting his
petition for further compensation. Rugan
challenges the Commission's decree on the
ground that the Commissioner computed
the level of his compensation for partial loss
of earning capacity without taking into
account the wages he would have earned at
his former trade had his injury not forced
him to cease that trade. We affirm the
judgment.

On February 25, 1975, Rugan sustained a
ruptured lumbar disc while employed by the
Dole Company as an electrician. After the
injury he received compensation for total
incapacity until September 18, 1975. On
June 5, 1979, he filed a petition for further
compensation for total incapacity caused by
the 1975 injury.

At the hearing on his petition Rugan
testified that for some time he had been
unable to find work but had finally secured
employment in a CETA program. His sala-
ry in the CETA program was less than the
union wages he had been earning as an
electrician when he was injured. Rugan
further testified that the hourly wage for
electricians in his union had risen after his
injury compelled him to stop working in
that trade.

In a decree issued on April 18, 1980, the
Commissioner found that before Rugan was
hired by CETA he totally lacked earning
capacity because his partial medical disabili-
ty made it impossible for him to find remu-
nerative work that he could do. The Com-
missioner found also that after Rugan be-
gan working for CETA he had only a par-
tial loss of earning capacity. Although the

Commissioner did not expressly state his method of computation, he seems to have determined Rugan's compensation by subtracting his post-injury weekly wage as a CETA worker from his pre-injury average weekly wage as an electrician and then performing the other computations prescribed in 39 M.R.S.A. § 55 (1978).[1]

On appeal Rugan contends that the Workers' Compensation Act requires the Commissioner to base the amount of compensation on an estimate of what the employee could have earned while disabled had it not been for his injury. He argues that it is unjust, in a highly inflationary economy, for the Commissioner to begin his determination by subtracting his post-injury weekly earnings merely from his pre-injury average weekly wage. Citing the provisions in 39 M.R.S.A. §§ 54 and 55 for adjustment of compensation to reflect the influences of inflation and deflation,[2] Rugan contends that the legislature intended that the level of benefits should respond to general economic changes that cause a decline in the worker's real earning capacity. More specifically, he argues that the Commission must recognize not only the levels of inflation reflected in the officially-computed average weekly wage in Maine, but also any increase in the wages paid to members of the employee's trade. We do not read the Maine Workers' Compensation Act as requiring, or even authorizing, the computation advocated by the employee.

The statutory provision governing awards of compensation for partial loss of earning capacity, 39 M.R.S.A. § 55, provides that the first step in determining the amount of a worker's loss of earning capacity requires comparing "his average gross weekly wages, earnings or salary before the injury and the weekly wages, earnings or salary which he is able to earn thereafter...." The plain language of the statute thus prescribes a comparison between actual earnings before the disabling injury and earning potential after the injury.

The reference in the statute to post-injury earning potential rather than actual wages reflects the legislative understanding that what a worker is actually earning after an injury may be an unreliable indicator of lost earning capacity. This Court has recognized that a disabled employee's actual post-injury income is not necessarily an accurate measure of his earning capacity. *Severy v. S. D. Warren Co.*, Me., 402 A.2d 53, 55 (1979). In contrast, the provision for "average gross weekly wages, earnings or salary before the injury" is definitive. The statute reflects a legislative conclusion that the most reliable indicator of the worker's pre-injury earning capacity is what he actually earned at his former job.

If we were to accept the employee's argument that his potential future earnings in his pre-injury occupation must be taken into account in setting the level of compensation benefits, we should have to construe the statute as if it prescribed a comparison between what the employee could have earned had it not been for his injury and what he is capable of earning after the injury. In effect, such a construction would require the Commissioner to assess the difference between the employee's post-injury earning capacity and what that earning ca-

---

1. 39 M.R.S.A. § 55 provides for compensation for partial incapacity as follows:

    While the incapacity for work resulting from the injury is partial, the employer shall pay the injured employee a weekly compensation equal to ⅔ the difference, due to said injury, between his average gross weekly wages, earnings or salary before the injury and the weekly wages, earnings or salary which he is able to earn thereafter, but not more than the average weekly wage in the State of Maine as computed by the Employment Security Commission; 133⅓% of such average weekly wage as of July 1, 1977; 166⅔% of such average weekly wage as of July 1, 1979; and 200% of such average weekly wage as of July 1, 1981; and such weekly compensation shall be adjusted annually on July 1st so that it continues to bear the same percentage relationship to the average weekly wage in the State of Maine as computed by the Employment Security Commission, as it did at the time of the injury. 39 M.R.S.A. § 55 (1978).

2. *See* note 1 *supra* for the text of section 55. Section 54, providing for total incapacity, contains an identical inflation-deflation adjustment provision.

pacity would have been if the injury had not occurred.

It is true that sections 54 and 55 of the Workers' Compensation Act manifest a purpose of making the level of compensation benefits respond in some degree to the effects of inflation and deflation. Under those provisions, an injured worker's compensation payments must be adjusted annually in accordance with increases or decreases in the state-wide average weekly wage. However, those provisions do not support the employee's argument that increases in the wages paid to workers in the employee's pre-injury trade are relevant to the computation of compensation benefits. Sections 54 and 55 protect the employee specifically to the extent of increases in the average weekly wage of all workers in Maine; they do not manifest a purpose of also restoring to the worker the wage increases he might have obtained in his particular trade.

This Court has repeatedly rejected the contention that "earning capacity" means capacity to perform the same work the employee was doing before his injury. *E. g., Gordon v. Aetna Cas. & Sur. Co.*, Me., 406 A.2d 617, 619 (1979). In view of those decisions it would be illogical to measure the employee's loss of earning capacity by reference to wage increases he would have enjoyed had his pre-injury employment continued. Application of such a measurement would also be speculative to a considerable degree, requiring evaluation in each case of the expectancy of increased income and placing a heavy burden on the Commission to administer claims fairly and speedily.[3]

The Commissioner did not err in his computation of Rugan's compensation.

The entry is:

Appeal denied.

Judgment affirmed.

It is ordered that the employer pay to the employee an allowance of $550 for his counsel fees plus his reasonable out-of-pocket expenses for this appeal.

All concurring.

---

**3.** *Cf.* 39 M.R.S.A. § 92 (1980–81 Supp.); *Newell v. North Anson Reel Co.*, 161 Me. 461, 214 A.2d 97 (1965).