Phillippe J.A. LAGASSE

v.

HANNAFORD BROTHERS COMPANY.

Supreme Judicial Court of Maine.

Argued June 4, 1985.

Decided Aug. 30, 1985.

McTeague, Higbee, Libner, Reitman, MacAdam & Case, Patrick N. McTeague (orally), James W. Case, Brunswick, for plaintiff.

Hunt, Thompson & Bowie, Frank W. De-Long, III (orally), Portland, for appellee.

Cuddy & Lanham, Kevin M. Cuddy, Bangor, amicus curiae, for Georgia-Pacific Corp.

Mitchell & Stearns, Peter M. Weatherbee, Bangor, amicus curiae, for Champion Intern. Corp.

Mitchell & Stearns, Nathanial M. Rosenblatt, Bangor, amicus curiae, for Great Northern Paper Co.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and GLASSMAN, JJ.

McKUSICK, Chief Justice.

In this workers' compensation case, both the injured employee (Phillippe J.A. Lagasse) and his employer at the time of his work-related injury (Hannaford Brothers Company) appeal the decision of the Appellate Division of the Workers' Compensation Commission. In that decision the Appellate Division affirmed in part and reversed in part the hearing commissioner's award to Lagasse of partial compensation at varying rates, subject to an inflation-deflation adjustment pursuant to 39 M.R.S.A. § 55

(Pamph.1979–1984).[1] Hannaford and Lagasse raise two important issues of workers' compensation law that this court has never before addressed. We find that the Appellate Division correctly declared the law applicable to those issues in this case, and so we deny both Hannaford's appeal and Lagasse's cross-appeal.

Lagasse worked as a meat cutter for Hannaford and a business predecessor from 1966 until March 1981. In the period of October 1980 to March 1981, he suffered four reported episodes of respiratory difficulty resulting from exposure to chemical fumes on the job. After the first three incidents Lagasse and Hannaford entered into agreements, duly approved by the commission, by which Hannaford paid him total compensation for the fixed periods of October 7–30, 1980; November 8–17, 1980; and March 2–9, 1981. At the time of his injury Lagasse was receiving an hourly wage of $10.05 and worked about 43 hours per week.[2] After the last incident on March 12, 1981, Lagasse left work at Hannaford on the ground that he could no longer work as a meat cutter because of his medical condition. On May 19, 1981, he took a job with American Messenger Service as a truck driver delivering packages, earning a fixed weekly salary that in two steps was raised to $258 per week in about a year. Lagasse spent about 50 hours a week on his salaried job with his new employer.

Lagasse filed with the commission a timely petition seeking further compensation commencing March 12, 1981. After hearings, a single commissioner on September 6, 1983, granted Lagasse's petition, stating:

> Based on the evidence adduced, the Commission finds the employee entitled to further total compensation from March 12, 1981 to May 18, 1981; and partial compensation from May 19, 1981 to the present and continuing at varying rates to be determined by the difference between his average weekly wage on the date of injury and his present[3] wages at American Messenger Service.

Thus, by this decree, with application of 39 M.R.S.A. § 55, Lagasse's weekly partial compensation for any week (PC) is represented by the following:[4] $PC = \frac{2}{3}(AWW_H - WE_A)$; where $AWW_H$ is the amount of Lagasse's average weekly wage at Hannaford on the date of the injury, and $WE_A$ is the amount of Lagasse's earnings for the week in question at American Messenger Service. The hearing commissioner

---

1. 39 M.R.S.A. § 55 (Pamph.1979–1984) provides:

   While the incapacity for work resulting from the injury is partial, the employer shall pay the injured employee a weekly compensation equal to ⅔ the difference, due to the injury, between his average gross weekly wages, earnings or salary before the injury and the weekly wages, earnings or salary which he is able to earn thereafter, but not more than 166⅔% of the average weekly wage in the State as computed by the Employment Security Commission; and such weekly compensation shall be adjusted annually so that it continues to bear the same percentage relationship to the average weekly wage in the State as computed by the Employment Security Commission, as it did at the time of the injury. The annual adjustment required by this section shall be made on the anniversary date of the injury, except that, where the injury occurred prior to July 1, 1983, or where the effect of the 166⅔% maximum is to reduce the amount of compensation to which the claimant would otherwise be entitled, the adjustment shall be made annually on July 1st.

2. The confusion that apparently existed on the part of the hearing commissioner as to the number of hours worked by Lagasse for Hannaford (i.e., whether 43 or 40 hours per week) becomes irrelevant in view of our holding that the commissioner erred in artificially reducing Lagasse's actual salary in his post-injury employment.

3. [Footnote not in original] Although the word "present" is subject to misinterpretation, its use in an order for "compensation at varying rates" makes abundantly clear that "his present wages" means Lagasse's wages from week to week on his present job at American Messenger Service. Neither Lagasse nor Hannaford has ever raised any question as to the meaning of the commissioner's decision.

4. In the facts of this case, the section 55 provision limiting compensation to 166⅔ percent of the average weekly wage in Maine (see n. 1 above) does not come into play.

thus decreed compensation to be computed at a rate varying from week to week depending upon the variable of Lagasse's earnings on his post-injury job. This form of compensation is called "varying rate compensation" as distinguished from the "fixed rate compensation" payable to an injured employee for whom a set percentage of incapacity has been determined.

In findings of fact and conclusions of law issued on March 19, 1984, without any further hearing, the commissioner additionally directed that the partial compensation to be paid by Hannaford for the period commencing May 19, 1981, should be computed on the basis of a hypothetical 40-hour work week at American Messenger Service, rather than the 50-hour week that Lagasse on the average actually spent on that salaried job. The consequence of that further order was to disregard 20% of Lagasse's post-injury earnings, for the purpose of computing the amount of partial compensation he was entitled to receive from Hannaford. By this "50-to-40 adjustment," Lagasse's partial compensation comes to be represented by the following: $PC = \frac{2}{3} (AWW_H - .80 \times WE_A)$.

■ Subsequently, the hearing commissioner made another, final amendment of his decree. He ordered that the "partial compensation from May 19, 1981, to the present and continuing shall be paid at varying rates to be computed in the manner determined in *Arnold v. H.O. Bou-chard, Inc.,* [No. 83–89 (Me.Workers' Comp.Comm'n App.Div. October 7, 1983)]."[5] The *Arnold* formula, which the hearing commissioner thus incorporated by reference in his decree, provides in "varying rate" cases a simple method for effecting the inflation-deflation adjustment that section 55 requires be made in weekly compensation benefits on July 1 of each year:

such weekly compensation shall be adjusted annually so that it continues to bear the same percentage relationship to the average weekly wage in the State as computed by the Employment Security Commission, as it did at the time of the injury.

See n. 1 above. By the *Arnold* formula the percentage increase or decrease in the average weekly wage in the State is applied only to the employee's pre-injury average weekly wage; it is not applied to the employee's post-injury earnings. Thus, in sum, the hearing commissioner's decree, with the amendments for the 50-to-40 adjustment and for the *Arnold* inflation-deflation adjustment, ordered Lagasse's partial compensation for any given week to be computed as follows: $PC = \frac{2}{3} (I/D \times AWW_H - .80 \times WE_A)$; where I/D is the inflation-deflation factor, calculated by dividing (1) the State's average weekly wage on the most recent July 1st, by (2) the State's average weekly wage on the date of Lagasse's injury.

---

**5.** The Law Court denied the employer's petition for appellate review of that Appellate Division decision, in *Arnold v. H.O. Bouchard, Inc.,* Law Court Docket No. WCC–83–410 (Dec. 13, 1983). Denial or granting of appellate review in a workers' compensation case rests within the discretion of a panel of the Law Court consisting of at least five justices. 39 M.R.S.A. § 103–C(3) (Pamph. 1979–1984). To grant review, at least three justices must give their approval. *Id.* Denial of the petition in *Arnold,* therefore, means merely that there were not three justices who considered the case an appropriate one for Law Court review. As is true of the denial of a petition for certiorari by the United States Supreme Court, the Law Court's denial of review in a workers' compensation case does not constitute a ruling on the merits, nor does it carry with it any "implication whatever regarding the Court's views on the merits of a case which it has declined to review." *Maryland v. Baltimore Radio Show, Inc.,* 338 U.S. 912, 919, 70 S.Ct. 252, 255, 94 L.Ed. 562 (1950) (Justice Frankfurter's opinion in connection with denial of a petition for certiorari). *See generally* R. Stern & E. Gressman, *Supreme Court Practice* § 5.7 (5th ed. 1978).

The question whether a decision by one panel of commissioners sitting in the Appellate Division should, thereafter until overruled by the Law Court, be treated as a precedent binding upon all hearing commissioners and other panels raises quite different considerations of policy and practical administration. We express no opinion on that question.

■ Hannaford appealed the hearing commissioner's final decree to the Appellate Division, attacking the validity of both the 50-to-40 adjustment and the *Arnold* formula. By its decision entered on January 8, 1985, the Appellate Division sustained Hannaford's appeal on the 50-to-40 adjustment, but otherwise affirmed the commissioner's decree. We have granted appellate review of that Appellate Division decision on both Hannaford's appeal and Lagasse's cross-appeal. The hearing commissioner awarded Lagasse partial compensation at varying rates to be computed in accordance with a formula specifically prescribed by his decree. The exact amount of the decreed compensation for any particular week, whether in the past or in the future, can be computed as a ministerial matter. There is no dispute between the parties as to Lagasse's average weekly wage at Hannaford or the other factors to be inserted in the formula. The legal issues are clearly posed and no further fact findings are necessary for us to decide them. The commissioner's decision is thus ripe for appellate review. *See generally* 4 K. Davis, *Administrative Law Treatise* § 25:16 (2d ed. 1983).

### I.

The only issue presented by Hannaford's appeal involves the hearing commissioner's use of the *Arnold* formula to make the

inflation-deflation adjustment required by section 55.[6] That statutory provision is intended to give injured employees protection against inflation. Conversely, if the economy should enter a period of wage deflation, section 55 would protect employers from continuing to pay workers' compensation corresponding to earlier, higher levels of wages. Section 55 measures inflation and deflation, not by the familiar Bureau of Labor Statistics' Consumer Price Index, but rather by the change in the average weekly wage in Maine. For convenience, we refer to the measure of that change as the inflation-deflation factor (I/D).

■ In this case the hearing commissioner was called upon to make the section 55 adjustment in a situation where he had decreed partial compensation at a varying rate, computed for each week as the difference between 1) the employee's average gross weekly wages before his injury and 2) his earnings in that week on the new job at reduced pay that he took after his injury.[7] The Law Court in 1978 explicated the formula for making the section 55 adjustment when partial compensation is awarded on a set percentage of incapacity, *Bernard v. Cives Corp.*, 395 A.2d 1141, 1149–52 (Me.1978), and the parties here are in agreement that, when incapacity is set at a fixed percentage by agreement or decree, section 55 is complied with by simply and

---

**6.** The *Arnold* formula for the section 55 inflation-deflation adjustment was first developed by a single commissioner in a decision dated June 25, 1982, in the matter of *Arnold v. H.O. Bouchard, Inc.*, involving the employer's petition for review of incapacity in connection with a preexisting agreement for varying rate compensation. Thereafter, on October 7, 1983, a two-commissioner Appellate Division panel affirmed the *Arnold* decision. See n. 5 above. Since that time, all of the commissioners with one exception have apparently applied the *Arnold* formula at the hearings level in varying rate cases; and the Appellate Division has, in all seven cases decided on appeal to it, approved or ordered the use of the *Arnold* formula, with a dissent in two cases by the same commissioner.

**7.** Implicit in the hearing commissioner's use of actual post-injury earnings from week to week

as the subtrahend in computing Lagasse's varying rate compensation is his finding that those earnings fairly represent Lagasse's post-injury earning capacity; that is, they fairly represent, in the words of section 55, "the weekly wages, earnings or salary which he is able to earn thereafter." Although those post-injury earnings are not dispositive of the fact issue, *Severy v. S.D. Warren Co.*, 402 A.2d 53, 55 (Me.1979), the commissioner in the absence of any other evidence or any contradiction by either party was justified in drawing that factual inference. *See Fecteau v. Rich Vale Constr., Inc.*, 349 A.2d 162, 165–66 (Me.1975). In the present case, neither party objects to the commissioner's use of the varying rate method of fixing partial compensation or to his use of actual post-injury earnings as the surrogate for post-injury earning ability.

directly applying the I/D factor to the weekly compensation previously payable at the fixed rate. When, however, partial compensation is ordered at varying rates the compensation is determined each week by subtracting from the employee's pre-injury weekly wage his actual earnings in the current week. Here a complication arises because the employee's post-injury earnings may from time to time increase, not because of his improved ability to work and earn, but because of wage inflation affecting his particular industry and job. The consequence then is that the employee's workers' compensation benefit is reduced, tending to nullify the increase that otherwise by section 55 comes with any statewide wage inflation. The *Arnold* formula assumes that the employee drawing varying rate compensation enjoys wage inflation on his post-injury job equal to the statewide wage inflation. In computing the adjusted compensation, that formula, therefore, applies the I/D factor to the employee's pre-injury wages, but *not* to his post-injury earnings used as the subtrahend. The latter earnings are assumed to reflect already an inflation equal to that measured by the I/D factor. Thus, if the *Arnold* assumption corresponds to fact, that formula satisfies the mandate of section 55 that the partial compensation be adjusted "so that it continues to bear the same percentage relationship to the average weekly wage in the State ... as it did at the time of the injury."

Hannaford contends that the plain language of section 55 bars the use of the *Arnold* formula. It argues that the words "such weekly compensation" refer back to the language that appears earlier in the same sentence reading:

> a weekly compensation equal to ⅔ the difference, due to the injury, between his average gross weekly wages ... before the injury and the weekly wages ... which he is able to earn thereafter....

This weekly compensation is, Hannaford says, to be computed first (even though in the present fact circumstances the post-injury earnings may already be inflated in line with the statewide wage inflation) and then, and only then, should the I/D factor be applied.

In the specific circumstances presented by Lagasse's claim to an inflationary adjustment of his varying rate compensation, we reject the employer's literal reading of the statutory language. Statutes do not live by words alone. They take on vitality only when read in the transforming light of a real life situation, and then the question becomes what the legislature intended or reasonably would intend the words of the statute to mean when addressed to that particular situation. We have already said, in a different context, that the language of section 55 should not be parsed as an isolated grammatical exercise. *Bernard v. Cives Corp.*, 395 A.2d at 1145. The words of section 55, if disembodied from the fact situation presented by this appeal, may seem to dictate a mechanical adjustment of the previously calculated weekly compensation by simply multiplying "such weekly compensation" by the I/D factor. That reading, however, overlooks the demand of the statute that the hearing commissioner adjust the injured employee's compensation benefits to keep pace with statewide wage inflation (or deflation, if that should occur). The phrase "such weekly compensation" reasonably means nothing more than the compensation to be paid a partially disabled employee. The end result of the *Arnold* formula is to adjust the compensation to be paid that employee upward or downward with statewide wage inflation or deflation, and the sole question becomes whether the *Arnold* adjustment is a reasonable way of achieving the statutorily mandated purpose. We do not agree with Hannaford's contention that section 55 by its verbal formulation requires the adjustment to be made in one and only one way, to the exclusion of the *Arnold* formula. That formula in any particular case may be subject to attack for other reasons, but section 55 on its face does not proscribe its use.

Hannaford's construction of section 55 to require that the inflation adjustment be made *only* after the current week's earnings had been subtracted from the fixed pre-injury weekly wages, would produce results inconsistent with the purpose of the inflation adjustment. As stated in *Bernard v. Cives Corp.*, 395 A.2d at 1150, that purpose is

> to provide fair and even handed protection against inflation without building into the system an artificial enhancement of benefits that might render compensation more attractive than employment.

The partially injured employee who does not return to the work force draws compensation at a fixed rate and gets annual increases in step with statewide wage inflation. On the other hand, by Hannaford's construction of section 55, a partially injured employee who goes back to work will have his varying rate compensation reduced or eliminated to whatever extent his post-injury earnings are affected by a rising economy. By way of illustration, assume that the partially injured employee had a pre-injury average weekly wage of $400 and that when he first returns to work he was able to earn $300 per week. If over a period of time conditions of the general economy (rather than any improvements in his work capacity) inflated his wages by one third, his workers' compensation would be entirely eliminated, according to the Hannaford construction of section 55. In the same period, another injured employee who does not go back to work and so receives compensation at a fixed percentage of incapacity would get an automatic one-third increase in his benefit payments. That result would hardly be fair and evenhanded, and it might operate for some as a disincentive to trying to get back to work.

■ Having concluded that section 55 does not mandate the method of adjustment urged by Hannaford, the question remains whether the hearing commissioner and the Appellate Division erred in choosing the *Arnold* formula as the method to accomplish in Lagasse's case the inflation adjustment required by section 55. In reviewing that choice, we must pay considerable deference to the expert judgment that the commissioners have developed through their experience in administering the workers' compensation law, a task exclusively committed to their specialized attention by the legislature. *See National Council on Compensation Insurance v. Superintendent of Insurance*, 481 A.2d 775, 780 (Me. 1984); *Kelley v. Halperin*, 390 A.2d 1078, 1080 (Me.1978). *See generally* 5 K. Davis, *Administrative Law Treatise* § 29:16 (2d ed.1984). In selecting a method for making the section 55 adjustment in varying rate compensation, the commissioners cannot be expected to achieve perfect and certain accuracy. *Cf. New England Tel. & Tel. Co. v. Public Utilities Commission*, 470 A.2d 772, 776 (Me.1984) ("The [Public Utilities] Commission has broad discretion in selecting among various ratemaking methodologies, provided that they are reasonably accurate.... The Commission is not required to manipulate its methodologies to eliminate every shred of suggested inaccuracy").

■ Under the required deferential standard of review, we cannot say on this record that the *Arnold* formula was a legally erroneous way to make the required inflationary adjustment in Lagasse's compensation benefits. Hannaford presented no evidence to contradict the assumption underlying the *Arnold* formula that Lagasse's post-injury earnings at American Messenger Service would, over a reasonable term with a generally rising economy, reflect increases roughly comparable to those in the statewide average weekly wage. Hannaford makes no criticism of the assumption underlying the *Arnold* formula as applied to Lagasse, other than to state the obvious truth that only by sheer coincidence would there be any exact congruence between the statewide wage inflation and the wage rate increases received by Lagasse on his post-injury job. The logic of the *Arnold* formula is persuasive;

and, as for the assumption underlying the formula, we cannot say that this record was so lacking in evidence about Lagasse's delivery job that the hearing commissioner was barred from finding the necessary factual predicate. Unlike the alternative urged by Hannaford, the *Arnold* formula is unlikely to produce, solely because of the effects of inflation, a cessation in the compensation payable to an employee whose partial incapacity status is unchanged. Should the employer at any time conclude that the employee's incapacity has diminished or ended, it can pursue the well-established procedure for the review of incapacity under 39 M.R.S.A. § 100 (Pamph. 1979–1984). In absence of any clear demonstration that the *Arnold* assumption as applied to Lagasse's post-injury job is likely to be false in significant measure and over a significant period, the hearing commissioner did not act arbitrarily or unreasonably in ordering that the I/D adjustment be made in Lagasse's case by the *Arnold* formula.

█ We do not mean to say that the *Arnold* formula is required by section 55, or that it is the only way the Workers' Compensation Commission might reasonably carry out its section 55 mandate, or that the *Arnold* formula should be applied in every case of varying rate compensation. But we do say that in the present factual circumstances and on this record, an appellate court should not substitute its judgment for that of the agency that bears the statutory responsibility for the administration of the workers' compensation system.

█ Although we uphold the hearing commissioner's application of the *Arnold* formula on the present record, this case does demonstrate the complications that arise whenever partial compensation is ordered on a varying rate basis. Such orders have an attractive simplicity for the Workers' Compensation Commission since it thereby avoids the need for it to determine a fixed percentage of incapacity. That simplicity, however, is bought at the price of much greater difficulty in making as of each July 1st the inflation-deflation adjustment mandated by section 55. Hearing commissioners will do well to resort to ordering partial compensation at varying rates only with the agreement of the parties or in the situation where a fixed percentage of incapacity is shown on the record to be particularly inappropriate or particularly difficult to set.

## II.

█ As the sole issue on his cross-appeal, Lagasse attacks the Appellate Division's reversal of the hearing commissioner's ruling "as a matter of law that the partial compensation payable from May 19, 1981 to the present and continuing must be computed on the basis of a forty hour work week...." On appeal, the Appellate Division could find no evidence in the record to support that ruling. Reviewing the commissioner's ruling independently of the Appellate Division, as we must, *see Gulick v. Board of Environmental Protection*, 452 A.2d 1202, 1209 n. 6 (Me.1982), we also conclude that the commissioner erred in ordering that upward adjustment in Lagasse's workers' compensation benefits. The effect of that order, made without any supporting findings of fact, is to treat Lagasse, because he spends about 50 hours a week on his salaried job with American Messenger Service, as if he earned only 80% of his actual salary. The record contains no rational justification for such a hypothetical construct. Thus, we find that the commissioner's ruling cannot stand, even when we apply the deferential standard of review required by *Sutherland v. Pepsi-Cola Bottling Co.*, 402 A.2d 50, 52 (Me.1979) (absent specific findings of fact, this court must resolve all questions of fact in favor of the commissioner's decision and must sustain that decision unless the record fails to disclose any reasonable basis for it).

█ The 50-to-40 adjustment ignores the language of section 55 defining the compensation payable during a period when "the incapacity for work resulting

from the injury is partial." See n. 1 above. Under section 55 partial weekly compensation is two thirds of the difference between (1) the employee's average weekly wages at the time of the injury and (2) what he is able to earn after the injury. The computation is not made on the basis of a difference in hourly rates, actual or hypothetical. The starting point in the computation for Lagasse is his average weekly wages for a regular full working week on his job before the injury, determined as prescribed in 39 M.R.S.A. § 2(2) (Pamph.1979–1984). On the other hand, the post-injury subtrahend in the computation is *not* defined in section 2(2) or elsewhere in the workers' compensation law; it is simply Lagasse's earning capacity after the injury. His post-injury earning capacity is *not* limited to his ability to do the same work he was doing at the time of the injury, *see Gordon v. Aetna Casualty & Surety Co.*, 406 A.2d 617, 619–20 (Me.1979); but rather may arise from his ability to earn in self-employment or in a different occupation with a different method of pay. Indeed, in any compensation proceeding, that post-injury earning capacity has to be determined for the best job the injured employee is capable of getting and performing, whether he in fact returns to work or not.

In Lagasse's case, the commissioner impliedly found in his initial decision of the case on September 6, 1983, that Lagasse's weekly salary at American Messenger Service fairly represented his post-injury earning capacity. On the record, that was a justifiable inference. *See Fecteau v. Rich Vale Construction, Inc.*, 349 A.2d 162, 165–66 (Me.1975); also see n. 7 above. However, the record contains no evidence whatever that supports the commissioner's implied finding six months later, on March 19, 1984, that Lagasse's post-injury earning capacity was only 80% of his actual post-injury salary. On the contrary, Lagasse was paid a fixed salary for accomplishing the work associated with delivering packages five days a week to homes and businesses in an assigned area of Greater Portland. Before this court, Lagasse appropriately abandons an argument he made before the Appellate Division that " 'overtime worked after the injury should be omitted from consideration if overtime was not included in the calculation of the pre-injury wage basis' citing 2 Larson, *Workmen's Compensation Law* § 57.33." The salary paid Lagasse by American Messenger Service included no payment whatever for overtime.

The hearing commissioner's order that Lagasse's earning capacity after his injury was only 80% of what he actually was earning lacks any foundation, either in the evidence or in the law. The Appellate Division correctly reversed that part of the commissioner's order.

The entry is:

Decision of the Appellate Division of the Workers' Compensation Commission affirmed.

It is further ordered that the employer pay to the employee an allowance for counsel fees in the amount of $550, together with his reasonable out-of-pocket expenses for this appeal.

ROBERTS, VIOLETTE, WATHEN and GLASSMAN, JJ., concurring.

NICHOLS, Justice, dissenting.

I respectfully dissent. I cannot join today's majority in affirming the decision of the Appellate Division of the Workers' Compensation Commission because the provisions of 39 M.R.S.A. § 55 (Pamph.1979–84) make "weekly wages, earnings or salary which he is able to earn thereafter" an element in computing the compensation for partial incapacity to which a worker may be entitled, and because in the case before us the factfinder has not specifically found the post-injury earning capacity of Phillippe J.A. Lagasse.

Lacking a finding on this key element in the computation, the Appellate Division implicitly, and in a footnote this Court explicitly, treated Lagasse's wages from week to week at American Messenger Service as

the full measure of his ability to earn after his injury. It may have been that amount, and it may have been more.

Often a worker's actual post-injury earnings may indicate the full extent of his ability to earn, *Fecteau v. Rich Vale Construction, Inc.*, 349 A.2d 163, 165 (Me. 1975), but such is not always the case. *Severy v. S.D. Warren Co.*, 402 A.2d 53, 55 (Me.1979). The evidence of what a worker later earned is "a useful indicator, not a talisman." *Id. See* 2 Larson, *Workmen's Compensation Law* § 57.2 at 10–76 n. 42 (1983).

Moreover, when Hannaford Brothers Company seasonally filed a motion for findings of fact and conclusions of law, it then became incumbent upon the hearing commissioner to make specific factual findings to enable the Law Court "to determine whether competent evidence supports the Commission's decision and whether its decree is based either upon a misapprehension of fact or a misapplication of law to the facts." *Dufault v. Midland-Ross of Canada, Ltd.*, 380 A.2d 200, 203 (Me.1977). Still the commissioner did not fill this void.

From the circumstance that the parties may seem to be in agreement as to the several factors to be inserted into the formula it does not follow that the computation becomes merely "a ministerial matter." By delegation of the task to staff the Commission evades its own responsibility, proclaimed in the directive of 39 M.R.S.A. § 99, to find the facts specially.

The order of the Appellate Division should, therefore, be vacated, and the case should be remanded for the discharge of this quasi-judicial duty, not by its clerical staff, but by the tribunal itself.