Keith BRAGG

v.

CHAMPION INTERNATIONAL
CORPORATION, et al.

Supreme Judicial Court of Maine.

Argued Nov. 18, 1993.
Decided Jan. 18, 1994.

Thomas T. Watson (orally), McTeague, Higbee, Libner, MacAdam, Case & Watson, Topsham, for appellant.

Peter M. Weatherbee (orally), Weatherbee, Woodcock, Burlock & Woodcock, P.A., Bangor, for appellees.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

CLIFFORD, Justice.

Keith Bragg appeals from an order of the Appellate Division of the Workers' Compensation Commission affirming a decision of the Commission granting the petition of Champion International Corporation, Bragg's employer, for a review of Bragg's partial incapacity benefits. Because we agree with Bragg that the Commission's reduction of his benefits is based on an individualized consideration of economic circumstances relating to Bragg's former job, and is contrary to our decision in *Rugan v. Dole Co.*, 429 A.2d 535 (Me.1981), we vacate the decision.

Bragg was working as a lift-truck operator at Champion's mill in Bucksport when, on September 19, 1987, he suffered a back injury. He received total incapacity benefits until he returned to work on February 8, 1988. Thereafter, he received benefits based on partial incapacity, payable at varying rates. *See Lagasse v. Hannaford Bros.*, 497 A.2d 1112, 1114–15 (Me.1985). Bragg was no longer able to perform his previous job, and he was assigned duties working on the plant's "roll wrapper." ·

Bragg's job on the roll wrapper involves an hourly wage higher than his work as a lift-truck operator. Bragg's former position, however, on which his average weekly wage prior to the injury is based, required him to work every Sunday, for which he received "double time" premium pay. His work on the roll wrapper requires Bragg to work only three Sundays in each 28–day period. Pursuant to a contract negotiated between Champion and its paperworkers' union, employees began receiving only "time-and-a-half" for Sunday work as of January 1, 1988, and "straight time" for Sunday work beginning on January 1, 1989. A subsequent labor agreement provided that Champion employees would receive a 6% hourly rate increase effective May 1, 1990, in part to make up for the previous losses in Sunday premium pay.

Champion filed a petition for review of incapacity with the Workers' Compensation Commission contending that Bragg's benefits should be revised downward to reflect the loss of Sunday premium pay contained in the labor contract. The Commission agreed with Champion and reduced those benefits.[1] The

---

1. Specifically, the Commission found that the labor concessions resulted in the loss of an average of eight hours of work per week. The Commission multiplied this by two-thirds, as required by the partial incapacity statute, to arrive at a figure of 5.33 hours per week. Then the Commission ruled that this 5.33 hours of lost time should be multiplied by the lesser of (1) the

Appellate Division of the Workers' Compensation Commission affirmed the Commission and we granted Bragg's petition for appellate review. *See* 39 M.R.S.A. § 103–C (1989).

In this appeal from the Appellate Division, we review directly the decision of the Commission. *Harvie v. Bath Iron Works*, 561 A.2d 1023, 1024 (Me.1989). Bragg is entitled to be compensated for partial incapacity pursuant to former section 55–A of Title 39, the statute in effect at the time of his injury.[2] That section provides in part:

> While the incapacity for work resulting from the injury is partial, the employer shall pay the injured employee a weekly compensation equal to two thirds of the difference, due to injury, between his average gross weekly wages, earnings or salary before the injury, and the weekly wages, earning or salary which he is able to earn after the injury, but not more than the maximum benefit under section 53–A. This weekly compensation shall be adjusted annually so that it continues to bear the same percentage relationship to the state average weekly wage, as computed by the Maine Unemployment Insurance Commission, as it did at the time of the injury.

In granting Champion's petition for review of incapacity, the Commission agreed with Champion that the post-injury changes in the union contract eliminating premium pay for Sunday work resulted in Bragg being overcompensated for his partial incapacity. The Commission concluded that the entire difference between Bragg's pre-injury average weekly wage (based in part as it is, on the Sunday premium pay in effect at the time of his injury), and his post-injury earnings was not attributable to his injury. Part of that difference was the result of the wage concessions made by his union. Relying on the "due to injury" language in the statute, the Commission devised a formula to reduce Bragg's compensation for partial incapacity to reflect that part of the difference that the

Commission concluded was attributable to economic factors as opposed to his injury. The Commission's formula took into account not only the lack of premium pay for current employees, but also the 6% wage increase as well. *See supra* note 1.

The Commission's decision, however, is contrary to the statute governing partial incapacity as construed in *Rugan v. Dole Co.*, 429 A.2d 535 (Me.1981). Rugan, who was receiving compensation for partial incapacity pursuant to the predecessor statute to section 55,[3] sought an increase in compensation to reflect pay increases that had been granted to members of the trade union he belonged to prior to his injury. He unsuccessfully contended that it was unjust in a highly inflationary economy to base his compensation for partial incapacity on his pre-injury average weekly wage. *Rugan*, 429 A.2d at 536. We recognized that the statute acknowledged inflationary and deflationary changes in the economy and provided for adjustments to compensation for partial incapacity, but only on a statewide, as opposed to an individual, basis. *Id.* at 537. We rejected Rugan's argument that we should "construe the statute as if it prescribed a comparison between what the employee could have earned had it not been for his injury and what he is capable of earning after the injury." *Id.* at 536. We concluded that the pre-injury average weekly wage was definitive and not adjustable and that such a construction of the statute as advanced by Rugan would inject speculation into the determination and unduly burden the Commission in its administration of claims. *Id.* at 536–37.

Just as the employee in *Rugan* was precluded from having his compensation for partial incapacity individually based on what he could have earned had he not been injured, when that amount increased following his injury, so too is the employer, in this case Champion, prevented from taking advantage of post-injury wage decreases in the employee's former job, to decrease the compensa-

---

employee's original hourly rate as escalated, or (2) his current hourly rate less six percent (to reflect the pay increase granted in 1990). According to Champion, this calculation worked out to a reduction of $70.04 per week.

2. *See* P.L.1985, ch. 372, § 19. 39 M.R.S.A. § 55–A was replaced by 39 M.R.S.A. § 55–B (1989). P.L.1987, ch. 559, pt. B, §§ 29, 30.

3. 39 M.R.S.A. § 55 (repealed by P.L.1987, ch. 55, § B(28)).

tion paid to Bragg. Adjustments by the Commission are limited to annual adjustment based on the statewide average weekly wage as provided for in section 55–A. *Beaulieu's Case*, 132 Me. 410, 171 A. 696 (1934), relied on by the employer, is distinguishable. The *Beaulieu* court permitted a downward adjustment in partial incapacity benefits based on falling wages in the employee's trade. The court, however, was applying a version of the partial incapacity statute that did not include an annual adjustment provision to account for changing economic circumstances.

Moreover, the Commission decision is premised on a factual error. The Commission determined that Bragg's post-injury earnings were not an accurate reflection of his ability to earn. Although the post-injury wages do not *always* accurately reflect a partially incapacitated employee's post-injury capacity to earn, *Rugan*, 429 A.2d at 536 (citing *Severy v. S.D. Warren Co.*, 402 A.2d 53, 55 (Me.1979)), there is nothing in this record to indicate, and Champion does not seriously contend otherwise, that Bragg's current wages do not fully and accurately reflect his post-injury earning capacity. *Rugan* clearly prohibits any adjustment to Bragg's pre-injury average weekly wage, and the Commission erred in basing its decision on an adjustment to Bragg's post-injury earning capacity.

The entry is:

Decision vacated. Remanded to the Workers' Compensation Board for denial of the employer's petition.

All concurring.