1998 ME 19

Alfred GENDREAU

v.

TRI–COMMUNITY RECYCLING

and

Maine Municipal Association.

Supreme Judicial Court of Maine.

Argued Nov. 13, 1997.

Decided Jan. 26, 1998.

Norman G. Trask (orally), Currier & Trask, P.A., Presque Isle, for employee.

Paul H. Sighinolfi (orally), Jane E. Skelton, Rudman & Winchell, L.L.C., Bangor, for employer.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, DANA, LIPEZ and SAUFLEY, JJ.

CLIFFORD, Justice.

[¶ 1] The employee, Alfred Gendreau, appeals from a decision of the Workers' Compensation Board granting his petition for restoration, but permitting the employer a credit in the amount of sick leave payments received by the employee during his period of incapacity. Because we agree with the Board that the employer's sick leave policy in this case constitutes a "wage continuation plan" that may be offset against workers' compensation benefits, we affirm the decision of the Board.

[¶ 2] Gendreau suffered a work-related neck-injury on November 10, 1991, while employed at Tri–Community Recycling. Gendreau subsequently suffered a stress-related injury in July 1994 that was related, in part, to his previous neck-injury and, in part, to work-related stresses that Gendreau experienced after the injury. Tri–Community paid Gendreau sick leave pay into September 1994. Gendreau has not returned to work. Gendreau filed a petition for restoration and the Board granted the petition, awarding short-term total benefits from the period beginning July 7, 1994 and ending September 15, 1994.

[¶ 3] A dispute arose after the decree was issued concerning whether Tri–Community was entitled to an offset for the sick leave payments made during the period of total incapacity, and Gendreau filed a motion for findings of fact on this issue. Because the issue was not addressed at the original hearing, a conference was held to discuss resolution of the dispute. At the Board's request, Tri–Community's attorney submitted a letter to the Board that summarized the employer's unwritten absentee and sick pay policy:

> Tri–Community Recycling is an extremely small operation. At the time of Mr. Gendreau's hiring, there were four employees. This employer has not

adopted a personnel policy manual outlining the company's policies. I have been told by Ken Hensler, who you will recall testified in this case, that there is a policy on absenteeism/extended absenteeism, but the policy has never been reduced to writing. Employees of Tri–Community Recycling are entitled to absenteeism benefits after working for the Company for six months. After six months, the employee is allowed to accrue one day per month up to 90 days or 720 hours. The policy applied to Mr. Gendreau, and it is the policy under which he collected benefits immediately after he left work.

Gendreau does not dispute that this is an accurate description of the company sick leave policy. The Board denied Gendreau's motion, concluding that because there was no evidence that his sick pay could be "cashed out" when the employee terminates service, it was a "wage continuation plan" pursuant to 39–A M.R.S.A. § 221(1)(B) (Supp.1997),[1] and therefore, could be offset against workers' compensation benefits pursuant to 39–A M.R.S.A. § 221(3)(A)(2) (Supp.1997). We granted Gendreau's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp. 1997).

Section 221 provides, in pertinent part:

**§ 221. Coordination of benefit**

**1. Application.** This section applies when either weekly or lump sum payments are made to an employee as a result of liability pursuant to section 212 or 213 with respect to the same time period for which the employee is also receiving or has received payments for:

. . . .

**B.** Payments under a self-insurance plan, *a wage continuation plan* or a disability insurance policy provided by the employer. . . .

. . . .

**3. Coordination of benefits.** Benefit payments subject to this section must be reduced in accordance with the following provisions:

**A.** The employer's obligation to pay or cause to be paid weekly benefits other than benefits under section 212 subsection 2 or 3 is reduced by the following amounts:

. . .

**(2)** The after-tax amount of the payments received or being received under a self-insurance plan or *a wage continuation plan* or under a disability insurance policy provided by the same employer from whom benefits under section 212 or 213 are received if the employee did not contribute directly to the plan or to the payment of premiums regarding the disability insurance policy. . . .

39–A M.R.S.A. § 221. (emphasis added).

[¶ 4] Gendreau contends that because the sick leave payments were made pursuant to an informal, unwritten policy, they cannot be considered payments pursuant to a "wage continuation *plan*." We disagree. The statute does not require that the plan be in writing. Although Tri–Community did not have a *written* plan, Gendreau concedes that Tri–Community had a definite plan and that he received sick leave payments pursuant to that plan.

[¶ 5] Gendreau also contends that because the duration of sick leave pay was dependent on the length of the employees' service, it was an "earned benefit," and, therefore, must be treated as compensation for past service, not a wage continuation plan. This argument is based not on the plain statutory

---

**1.** The Board applied the current statute, 39–A M.R.S.A. § 221, and not the former statute applicable at the date of Gendreau's original injury, 39 M.R.S.A. § 62–B, *repealed and replaced by Maine Workers' Compensation Act*, P.L.1991 ch. 885, §§ A–7, A–8 (effective January 1, 1993). Although Gendreau's stress-related incapacity arose after June 1994, because Gendreau filed a petition for restoration related to the 1991 injury, the parties contend that the issue of the appropriate credit is governed by former section 62–B. As

we recently held in *Ray v. Carland Constr., Inc.* 1997 ME 206, ¶ 6, 703 A.2d 648, when an employee suffers successive work-related injuries that result in a single incapacity after 1993, the law at the time of the second injury, title 39–A, controls. We need not determine if the Board erred in applying section 221, however, because the language of current section 221 is essentially identical to former section 62–B. We discuss the issue in the context of the language of 39–A M.R.S.A. § 221.

language, but on the theory that Gendreau contends underlies the offset. *See* 1C A. Larson, *The Law of Workmen's Compensation*, § 57.46(c) (1993) (A "type of payment for which credit is usually disallowed is any kind of sick pay or vacation pay of which it can be said that the claimant's entitlement to the payment is based on past service rather than on the injury as such" (footnotes omitted)). We are unpersuaded by Gendreau's contention.

[¶ 6] Workers' compensation statutes in some states have been narrowly interpreted to preclude a credit for sick leave benefits that are exhaustible, *see e.g., Temple v. Department of Highways*, 445 Pa. 539, 285 A.2d 137, 140 (1971); *Peoples Natural Gas Co. v. Workmen's Compensation Appeal Bd.*, 65 Pa.Cmwlth. 119, 441 A.2d 1364, 1367 (1982), or that are not limited to work-related injuries, but may be used for nonwork-related illnesses, *see e.g., Tee–Pak, Inc. v. Industrial Comm'n of Illinois*, 141 Ill.App.3d 520, 95 Ill.Dec. 697, 703–04, 490 N.E.2d 170, 176–77 (4th Dist.1986). Other jurisdictions, however, provide for such a set off, *see e.g., Appleby v. Workers' Compensation Appeals Bd.*, 27 Cal.App.4th 184, 32 Cal.Rptr.2d 375, 379–80 (2 Dist.1994); *Morgan v. New York State Dev. Ctr.*, 166 A.D.2d 765, 563 N.Y.S.2d 125, 126 (3 Dept.1990).

██ [¶ 7] The plain language of section 221 of the Maine statute provides a credit to employers for payments made pursuant to a "wage continuation" plan.[2] The language led the Board to reasonably conclude that a "wage continuation plan" is a plan that is intended to replace an employee's wages during a period of disability. Tri–County's plan did exactly that. Decisions of the Board

interpreting the Workers' Compensation Act are entitled to deference unless the statute plainly compels a contrary result. *Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 360 (Me.1994). Moreover, the Board's construction of the statute to allow Tri–County to offset the sick leave payments paid to Gendreau is consistent with the policy of the Act prohibiting double-recoveries and the stacking of benefits. *See e.g., id.* at 360–61 (One of the purposes of former 39 M.R.S.A. § 62–B, predecessor statute to section 221, to prevent "double-dipping"); *Berry v. H.R. Beal & Sons*, 649 A.2d 1101, 1103 (Me.1994) (One of the purposes of section 62–B "to prevent the stacking of benefits").

[¶ 8] The fact that Gendreau's sick leave benefits in this case were not available to new employees, were exhaustible, and could be used in situations of nonwork-related illness, does not remove the essential purpose and character of the benefits as wage replacement during Gendreau's period of work-related incapacity. There was no evidence to suggest that Gendreau's sick leave plan could be used, or "cashed out," for any purpose other than as a wage replacement during periods of disability. We affirm the Board's conclusion that Tri–County's sick leave plan constitutes a wage continuation plan within the meaning of section 221 and that Tri–County is entitled to the offset.

The entry is:

Decision of the Workers' Compensation Board affirmed.

---

2. The phrase "wage continuation plan" also appears in Maine's "collateral source" statute, dealing with the collateral source rule in medical malpractice cases, defining a collateral source as a benefit paid or payable to the claimant to include: "A contractual or voluntary wage continuation plan or payments made pursuant to a plan provided by an employer or otherwise or any other system intended to provide wages during a period of disability." 24 M.R.S.A. § 2906(1)(B)(3) (Supp.1997). This definition of "wage continuation plan" is broad, including any payment intended to provide temporary wage replacement while an employee is incapacitated by an illness or injury. Although we have

not interpreted subsection 2906(1)(C) of the collateral source statute, similar language in collateral source statutes in other states has been interpreted as including sick leave pay, but not including annual leave or compensatory pay that can be used for purposes other than to provide wages during disability. *See e.g., State Farm Mut. Auto. Ins. Co. v. Egan*, 626 So.2d 1076, 1078 (Fla.App. 3 Dist.1993) (distinguishing sick leave benefits from annual leave or compensatory time that can be cashed out for other purposes); *Bruwelheide v. Garvey*, 465 N.W.2d 96, 98–99 (Minn.App.1991) (accrued sick leave that can be cashed out at retirement did not fall within collateral source definition).