2002 ME 134

**Michael DALEY**

v.

**SPINNAKER INDUSTRIES, INC.**

Supreme Judicial Court of Maine.

Argued: June 12, 2002.
Decided: Aug. 15, 2002.

Alexander F. McCann, (orally), Portland, for employee.

Kevin M. Gillis, (orally), Troubh, Heisler & Piampiano, P.A., Portland, (for Spinnaker Industries), H. Peter Del Bianco Jr., Lambert & Coffin, Portland, (for Sappi Fine Paper), for employers.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] The employer and employee cross-appeal from a decision of a hearing officer of the Workers' Compensation Board granting the employee's petition by awarding varying rates partial incapacity compensation with an offset to the employer in the amount of severance payments received by the employee after the injury. Because we conclude that the employer failed to meet its burden of proof to show that the severance pay in this case is a "wage continuation plan" pursuant to 39–A M.R.S.A. § 221 (2001), we vacate the hearing officer's decision to authorize an offset for those payments. We also conclude that the hearing officer made insufficient findings of fact and conclusions of law to support her award of varying rates partial incapacity benefits. Accordingly, we also vacate the hearing officer's varying rates award.

## I. BACKGROUND

[¶ 2] Michael Daley suffered his first work-related injury in 1997 after twenty-one years of employment at S.D. Warren Co. Spinnaker Industries, Inc. purchased the portion of S.D. Warren's production facility in 1998 that employed Daley, and

Daley suffered a second back injury in 1999, while employed by Spinnaker.

[¶ 3] Daley was terminated from his employment at Spinnaker in February 2000, when his job was eliminated. Daley was paid 22.5 weeks of severance pay at a rate of $1118 a week. Under the terms of the severance agreement, Daley was entitled to the full 22.5 weeks of severance payments regardless of whether he returned to work during that period. There is no evidence in the record concerning the purpose of the payments or the method of calculation.[1]

[¶ 4] Two weeks after being discharged, Daley began working for D & G Machine, earning less than his pre-injury wage. The record reflects that Daley has consistent and regular work hours at D & G, that he earns $810 a week, and that he receives fringe benefits valued at $69.86 a week.

[¶ 5] Daley filed petitions for an award with the Workers' Compensation Board against S.D. Warren and Spinnaker for his 1997 and 1999 injuries. The hearing officer denied the petition against S .D. Warren, concluding that the petition was time-barred. The hearing officer granted the petition against Spinnaker and awarded varying rates partial benefits based on the difference between the employee's pre-injury and post-injury earnings, with an offset for 22.5 weeks of severance pay paid to the employee.[2]

[¶ 6] Both parties moved for further findings of fact and conclusions of law and submitted proposed findings. The hearing officer denied the parties' motions, stating that the original opinion "provides an adequate foundation for appellate review" and that "[n]o further or more detailed findings are necessary in the circumstances of this case." We granted both parties' petitions for appellate review, pursuant to 39–A M.R.S.A. § 322 (2001), and consolidated the appeals.

## II.  DISCUSSION

### A.  The Employee's Appeal

[¶ 7] Daley contends that it was error for the hearing officer to permit the employer to take an offset for severance pay pursuant to 39–A M.R.S.A. § 221. Section 221 provides, in pertinent part:

§ 221.  Coordination of benefits

1.  Application. This section applies when either weekly or lump sum payments are made to an employee as a result of liability pursuant to section 212 or 213 with respect to the same time period for which the employee is also receiving or has received payments for:

. . . .

B.  Payments under a self-insurance plan, a wage continuation plan or a disability insurance policy provided by the employer . . . .

. . . .

3.  Coordination of benefits.  Benefit payments subject to this section must be reduced in accordance with the following provisions.

1.  The weekly severance amount of $1118 roughly corresponds to Daley's weekly earnings, but it does not exactly match his average weekly wage at the time of either his 1997 or his 1999 injuries. There is nothing in the record to explain why the employee received 22.5 weeks of severance benefits. Daley testified that the severance payments were reduced by taxes and the cost of continuing his medical insurance.

2.  Treating Daley's 1997 injury as a preexisting nonwork-related injury, the hearing officer found Spinnaker liable for the combination of both injuries. *See* 39–A M.R.S.A. § 201(4) (2001). Spinnaker has not appealed from this aspect of the decision.

A. The employer's obligation to pay or cause to be paid weekly benefits other than benefits under section 212, subsection 2 or 3 is reduced by the following amounts:

> . . . .
>
> (2) The after-tax amount of the payments received or being received under a self-insurance plan or a wage continuation plan or under a disability insurance policy provided by the same employer from whom benefits under section 212 or 213 are received if the employee did not contribute directly to the plan or to the payment of premiums regarding the disability insurance policy.

39–A M.R.S.A. §§ 221(1)(B), (3)(A)(2) (2001).

[¶ 8] Daley relies primarily on two cases, *Gendreau v. Tri–Community Recycling,* 1998 ME 19, ¶¶ 7–8, 705 A.2d 1106, 1108, and *Goff v. Central Maine Power,* 1998 ME 269, ¶ 8, 721 A.2d 182, 185, in support of his argument. The issue in *Gendreau* was whether the hearing officer erred in permitting the employer to offset sick leave benefits against workers' compensation benefits pursuant to an oral employment contract. *Gendreau,* 1998 ME 19, ¶ 3, 705 A.2d at 1106–07. In *Gendreau,* we concluded that sick leave benefits were a "wage continuation plan" pursuant to section 221:

> The plain language of section 221 of the Maine statute provides a credit to employers for payments made pursuant to a "wage continuation" plan. The language led the Board to reasonably conclude that a "wage continuation plan" is a plan that is intended to replace an employee's wages during a period of disability. [Tri–Community's] plan did exactly that. Decisions of the Board interpreting the Workers' Compensation Act

are entitled to deference unless the statute plainly compels a contrary result. *Jordan v. Sears, Roebuck & Co.,* 651 A.2d 358, 360 (Me.1994). Moreover, the Board's construction of the statute to allow [Tri–Community] to offset the sick leave payments paid to Gendreau is consistent with the policy of the Act prohibiting double-recoveries and the stacking of benefits. *See e.g., id.* at 360–61 (One of the purposes of former 39 M.R.S.A. § 62–B, predecessor statute to section 221, to prevent "double-dipping"); *Berry v. H.R. Beal & Sons,* 649 A.2d 1101, 1103 (Me.1994) (One of the purposes of section 62–B, "to prevent the stacking of benefits").

> The fact that Gendreau's sick leave benefits in this case were not available to new employees, were exhaustible, and could be used in situations of nonwork-related illness, does not remove the essential purpose and character of the benefits as wage replacement during Gendreau's period of work-related incapacity. There was no evidence to suggest that Gendreau's sick leave plan could be used, or "cashed out," for any purpose other than as a wage replacement during periods of disability. We affirm the Board's conclusion that [Tri–Community's] sick leave plan constitutes a wage continuation plan within the meaning of section 221 and that [Tri–Community] is entitled to the offset.

*Id.* ¶¶ 7–8, 705 A.2d at 1108 (footnote omitted).

[¶ 9] Pursuant to *Gendreau,* therefore, the test for determining whether employer-paid benefits are a "wage continuation plan" is whether "the essential purpose and character of the benefits [are for] wage replacement during [a] period of work-related incapacity." *Id.*

[¶ 10] In *Goff,* 1998 ME 269, ¶ 8, 721 A.2d at 185, we addressed the issue of

severance payments in the context of former 39 M.R.S.A. § 62–B (1989), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. § 221). Finding no express statutory language in the former statute authorizing an offset for severance pay, we vacated the hearing officer's decision permitting the employer to take such an offset. *Goff,* 1998 ME 269, ¶ 8, 721 A.2d at 185. Although former section 62–B, like current section 221, provided an offset for a "wage continuation plan," 39 M.R.S.A. §§ 62–B(2)(B), (3)(A)(1), (3)(A)(2) (1989), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8, we expressly declined to address whether the severance package at issue in *Goff* would be considered a "wage continuation plan" pursuant to section 221. *Goff,* 1998 ME 269, ¶ 8 n. 3, 721 A.2d at 185 n. 3.

[¶ 11] The determination whether what the parties designate as "severance pay" is a "wage continuation plan" for purposes of section 221 must be made on a case-by-case basis. As the party seeking the benefit of the section 221 offset, and as the party with the superior access to information concerning the nature of its benefit program, Spinnaker bore the burden to show that the severance pay in this case was a "wage continuation plan" for purposes of section 221. *See, e.g., Fernald v. Dexter Shoe Co.,* 670 A.2d 1382, 1385 (Me. 1996) (holding that employer bears burden to show variability of earnings to establish average weekly wage); *Nichols v. Cantara & Sons,* 659 A.2d 258, 262–63 (Me.1995) (holding that employee bears burden to

prove that no portion of third-party settlement is allocable to spouse's loss of consortium on employer's petition for a set-off against third-party recovery); *Ibbitson v. Sheridan Corp.,* 422 A.2d 1005, 1011 (Me. 1980) (holding that employee bears burden of production concerning work unavailability on employer's petition for review once employer shows that totally incapacitated employee has regained some physical capacity).

[¶ 12] As Daley contends, the hearing officer made no findings, nor is there any evidence in the record, concerning the nature or purpose of the severance payments. As a general matter, "severance pay" is commonly understood as payment in exchange for an employee's agreement to terminate employment.[3] In order to determine whether severance payments are intended as wage replacement or for some other purpose, the hearing officer must have sufficient information to make explicit findings concerning the nature and purpose of those payments. The mere fact that payments are characterized by the parties as "severance pay" is insufficient, as a matter of law, to determine whether the payments are a "wage continuation plan."

[¶ 13] Accordingly, we conclude that the employer failed to meet its burden of proof in the present case to establish that the essential purpose and character of the severance payments at issue here were for wage replacement during Daley's period of

---

**3.** Black's Law Dictionary defines "severance pay" as "[m]oney (apart from back wages or salary) paid by an employer to a dismissed employee. Such a payment is often made in exchange for a release of any claims that the employee might have against the employer." BLACK'S LAW DICTIONARY 1379 (7th ed.1999). Most jurisdictions that have addressed this issue do not permit employers to offset workers' compensation benefits by sev-

erance payments. *See, e.g., Coca–Cola Bottling Co. v. Rambo,* 576 So.2d 394, 395 (Fla. Dist.Ct.App.1991); *Kramer v. Workers' Comp. Appeal Bd.,* 794 A.2d 953, 959 (Pa. Commw.Ct.2002); *EMI Co. v. Workers' Comp. Appeal Bd.,* 738 A.2d 33, 36 (Pa. Commw.Ct.1999); *Rangel v. Ralston Purina Co.,* 248 Mich.App. 128, 638 N.W.2d 187, 193 (2002); *Childers v. Honeywell, Inc.,* 505 N.W.2d 611, 612 (Minn.1993).

work-related incapacity. *See Gendreau,* 1998 ME 19, ¶¶ 7–8, 705 A.2d at 1108. On remand, the award must be redetermined without an offset for the severance pay received by Daley.

### B. The Employer's Appeal.

■ [¶ 14] Spinnaker challenges the hearing officer's decision to award varying rates partial benefits. Section 213 of the Workers' Compensation Act provides, in pertinent part, that partially incapacitated employees are entitled to compensation "equal to 80% of the difference between the injured employee's after-tax average weekly wage before the personal injury and the after-tax average weekly wage that the injured employee is able to earn after the injury...." 39–A M.R.S.A. § 213(1) (2001). Unlike fixed rate partial benefits, which are calculated as a fixed percentage based on the difference between the employee's pre-injury wage and what the employee is able to earn following an injury, varying rates partial benefits are calculated on a week-by-week basis, according to the actual difference between an employee's pre-injury and post-injury wages. *See Lagasse v. Hannaford Bros. Co.,* 497 A.2d 1112, 1115 (Me.1985).

[¶ 15] We have previously recognized varying rates awards as an acceptable method for structuring an employer's payment obligation in appropriate cases. *See, e.g., Bernard v. Mead Publ. Paper Div.,* 2001 ME 15, ¶ 14, 765 A.2d 576, 580; *Lagasse,* 497 A.2d at 1119. · We have also

made clear, however, that varying rates awards should be the exception, not the rule, and that fixed rate benefits should be the standard practice in workers' compensation cases. *See Lagasse,* 497 A.2d at 1119. As we have stated, hearing officers "will do well to resort to ordering partial compensation at varying rates only with the agreement of the parties or in the situation where a fixed percentage of incapacity is shown on the record to be particularly inappropriate or particularly difficult to set." *Id.*

[¶ 16] Spinnaker filed a timely motion requesting further findings of fact and conclusions of law with respect to the hearing officer's decision to award varying rates partial incapacity benefits. Our decisions make clear that there are different standards of review applicable when the parties fail to move for further findings, as opposed to when a party files a motion for further findings, together with proposed findings.[4]

■ [¶ 17] When the parties fail to file a motion for findings of fact, we treat the Board " 'as having made whatever factual determination could, in accordance with correct legal concepts, support [its] ultimate decision, and we inquire whether on the evidence such factual determinations must be held clearly erroneous.' " *Gallant v. Boise Cascade Paper Gr.,* 427 A.2d 976, 977 (Me.1981) (quoting *Gorrie v. Elliott Jordan & Son,* 408 A.2d 1008, 1011 (Me.1979)). When a party requests and

4. Most of our decisions setting forth the standard of review arose in connection with former 39 M.R.S.A. § 99 (1989), which has been repealed and replaced by 39–A M.R.S.A. § 318 (2001). *See Maine Workers' Compensation Act of 1992,* P.L.1991, ch. 885, §§ A–7, A–8. Former section 99 provided that the former hearing commissioner "shall" make findings of facts and conclusions of law and file the appropriate decision if it differs from the decision filed before the request was made."

39–A M.R.S.A. § 99, *repealed by* P.L.1991, ch. 886, § A–7. Current section 318 provides that the hearing officer "may" make further findings in response to a timely motion. 39–A M.R.S.A. § 318. The alteration of the language from "shall" to "may" does not create a different standard of review, nor does it lessen the obligation of the hearing officer to make further findings when the underlying decision is inadequate to create a basis for meaningful appellate review.

proposes findings of fact, however, we "review only 'the factual findings actually made and the legal standards actually applied'" by the hearing officer. *Ladner v. Mason Mitchell Trucking Co.*, 434 A.2d 37, 40 (Me.1981) (quoting *Gallant*, 427 A.2d at 977; *see also Carroll v. Celsius Contractors*, 637 A.2d 111, 112 (Me.1994)). When the underlying opinion does not adequately set forth the factual findings and legal conclusions, the hearing officer should grant the motion and make findings which clarify the relevant disputed facts and the legal conclusions based on those facts.

[¶ 18] In the present case, the hearing officer denied the employer's motion for further findings of fact, stating that the original opinion contained sufficient findings to provide a basis for appellate review. We disagree. In the absence of an agreement authorizing an award of varying rates partial incapacity benefits, varying rates benefits should only be awarded when fixed rate benefits are "particularly inappropriate or particularly difficult to set." *Lagasse*, 497 A.2d at 1119. The hearing officer's decision is devoid of any findings or discussion concerning the propriety of a varying rates award. Based upon the factual findings made and the legal standards applied by the hearing officer, there is no foundation for a varying rates award and we must, therefore, vacate the same and remand for the entry of a fixed rate partial benefit award.

The entry is:

The decision of the Workers' Compensation Board is vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with the opinion herein.