Richard W. SEVERY

v.

S. D. WARREN COMPANY and Employers Insurance of Wausau.

Supreme Judicial Court of Maine.

June 4, 1979.

Zuckerman & Avaunt by Rochelle J. Brinnick (orally), Lawrence J. Zuckerman, Gray, for plaintiff.

Richardson, Hildreth, Tyler & Troubh by Ronald D. Russell (orally), Robert E. Noonan, Portland, for defendants.

Before McKUSICK, C. J., and ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

DELAHANTY, Justice.

The Workers' Compensation Commission granted the employer's petition for review of incapacity and approved a total suspension of payments. After obtaining a pro forma decree from the Superior Court sitting in Cumberland County, the employee appealed. We sustain the appeal and remand the case to the Commission for further proceedings.

The record discloses the following sequence of events: On October 29, 1974, the employee suffered an injury arising within the context of his employment. By the terms of an agreed award which fixed his pre-injury average weekly wage at $209.14, he was compensated at a rate commensurate with a total disability. Over a three-year period, the employee gradually recovered and returned to work although he was not able to earn at his prior level. A July 6, 1977, decree of the Industrial Accident Commission, as it was then denominated, fixed his compensation at "varying rates": two-thirds of the difference between his pre-injury wage and his wage after returning to work.

On October 3, 1977, the employee sustained a new injury and again claimed compensation. Three months later, however, on January 3, 1978, the employer filed the instant petition for review of incapacity and

suspended compensation on the ground that the employee at that time was earning in excess of the $209.14 pre-injury average weekly wage established in the 1974 award.

Hearings were held in January, 1978, at which evidence was taken bearing on the employee's petition, and in February, 1978, at which evidence was taken relevant to the employer's petition for review of incapacity. At the January hearing, the employer submitted a schedule reflecting the wages earned by the employee in the twelve months prior to the October, 1977, injury. At the February hearing, the Commissioner was reminded that a wage schedule had already been submitted during the January hearing.

At the opening of the February hearing, counsel for the employer stipulated that the employee continued to suffer from "residual physical impairments that are permanent" and that "no change in Mr. Severy's medical condition" had taken place since the filing of the July, 1977, decree. The employee, who was the sole witness at the hearing, testified that on October 1, 1977, he had been transferred from the Environmental Department to the Finishing Department. Although he admitted that his hourly pay remained the same, the employee maintained that his new position was less remunerative in that it provided fewer opportunities for overtime pay.

The employee also testified that during 1977 he had received in the neighborhood of $3,900 from the employer as compensation for filter repairs. He explained that he would take the employer's filters home to his wife, that his wife did the actual repair work, and that the employer would issue a check to him for the services rendered.

The Commissioner issued his decision granting the employer's petition on July 3, 1978. Referring to the wage statement submitted at the January hearing, the Commissioner found that the employee's average weekly wage from October 3, 1976, to October 2, 1977, was $210.45. Noting that "[w]hen injured on October 29, 1974, the respondent's average weekly wage was established at $209.14," the decree explained that "[s]ince his average weekly wage is [now] $210.45, we find as a fact that compensation at varying rates `was properly suspended . . . ." The Commissioner went on to state that his holding rendered moot the question of the significance of the $3,900 in payments made to the employee in 1977.

From the language of the decree, it is clear that the Commissioner reached his decision simply by comparing the employee's average weekly wage for the year following October 3, 1976, with his pre-injury average weekly wage. We agree with the employee that the Commissioner's reasoning was erroneous for two reasons. First, although actual post-injury earnings constitute strong evidence of earning capacity, *Fecteau v. Rich Vale Construction, Inc.*, Me., 349 A.2d 162, 165 (1975), they are not to be accorded a dispositive effect. Thus, it has uniformly been held in Maine, *Clark's Case*, 120 Me. 133, 137, 113 A. 51, 52 (1921), as well as in other jurisdictions, *e. g.*, *Woodard v. Dade County Board of Public Instruction*, 278 So.2d 620, 622 (Fla. 1973); *Hill v. General Motors Corp.*, 214 Kan. 279, 282, 519 P.2d 608, 611 (1974); *Employers Reinsurance Corp. v. Ryne*, 531 S.W.2d 156, 160 (Tex.Civ.App. 1975), that the mere fact, standing alone, that the employee is earning the same after the injury as he did before will not bar an award for partial disability. *See* 2 A. Larson, *Workmen's Compensation Law* § 57.21 (1976). In determining present earning capacity, evidence of actual wages is a useful indicator, not a talisman. The Commissioner's balance sheet approach was therefore improper.

The second error infecting the Commissioner's decision was his reliance upon irrelevant evidence. It is well established that on a petition for review of incapacity the petitioner has the burden of demonstrating that the employee's capacity to earn a wage has changed *since the Commission last entered a decree or approved an agreement.* *Matthews v. Boss*, Me., 389 A.2d 32, 34 (1978); *Dufault v. Midland-Ross of Canada, Ltd.*, Me., 380 A.2d 200, 203–04

(1977). In this case, the Commissioner bottomed his decision on a wage statement which indicated the employee's earnings over the twelve-month period of October 3, 1976, to October 2, 1977. Inasmuch as the last decree fixing the employee's degree of incapacity was entered on July 6, 1977, evidence of wages earned by the employee during the previous nine months was not relevant.

We are not persuaded by the employer's argument that since the wage statement shows that the employee's average weekly wage in the three-month period after the July, 1977, decree exceeded his pre-injury average weekly wage, this error was harmless. The employee testified that on October 1, 1977, he had been transferred to a less remunerative position which he continued to occupy at the time of the February, 1978, hearing. Thus, even if we were to sanction the Commissioner's method of determining earning capacity, we would still have to remand the case for further findings of fact because the Commissioner failed to take into account the wages earned since October of 1977.

The parties urge us to decide the question, held to be moot by the Commissioner, of whether the $3,900 paid to the employee for filter repairs may be considered in determining his degree of incapacity in light of 39 M.R.S.A. § 62 which provides that "benefits derived from any source other than the employer [shall not] be considered in fixing the compensation due." We find this question to be largely one of fact and as such must be addressed to and passed upon by the Commissioner at least in the first instance. It is for the Commissioner to determine, for example, whether the earnings are properly chargeable to the employee or to his wife, what percentage of the $3,900 reflects out-of-pocket costs of material used by the employee in effecting the repairs, and whether the employee's filter repair operations represent a temporary or permanent increase in his working capacity.

The employee also attacks the Commissioner's decree for failing to take into account the general rise in salaries caused by the inflation which the region, and indeed the country, has experienced since the employee was injured in 1974. This argument holds that with the decline of purchasing power a dollar-for-dollar comparison of the employee's current salary with his salary in 1974 would be extremely misleading. *See* 2 A. Larson, *supra* at § 57.32. Our examination of the record reveals that the employee did not advance this argument before the Commissioner, nor did he endeavor to introduce any evidence to support this contention, raised here for the first time. Whether in the criminal or civil sphere, we have long adhered to the practice of declining to entertain arguments not presented to the original tribunal. *Laurel Bank & Trust Co. v. Burns,* Me., 398 A.2d 41, 44 (1979); *Teel v. Colson,* Me., 396 A.2d 529, 533–34 (1979); *State v. Carney,* Me., 390 A.2d 521, 523–24 (1978). We discern no reason to depart from our familiar rule of appellate procedure in this case.

In sustaining the appeal and remanding the case to the Commission, we find ourselves with no opportunity to address the other matters raised by the employee.[1]

The entry is:

Appeal sustained.

Pro forma decree of the Superior Court vacated.

Case remanded to the Superior Court with instructions to remand to the Workers' Compensation Commission for further proceedings consistent with this opinion.

It is further ordered that the employer pay to the employee an allowance for counsel fees in the amount of $550, together with his reasonable out-of-pocket expenses, for this appeal.

POMEROY, J., sat at argument and conference but participated no further.

WERNICK, J., did not sit.

1. For example, the employee asserts that the wage statement was never technically admitted into evidence at the February hearing. This error, if any, can be cured when proceedings are reopened on remand.