Christine E. HARDY

v.

HARDY'S TRAILER SALES, INC.

Christine E. HARDY

v.

SWAMP FOX MOTOR INN.

Supreme Judicial Court of Maine.

Argued March 11, 1982.

Decided Aug. 9, 1982.

Vafiades, Brountas & Kominsky, Susan R. Kominsky (orally), Bangor, for plaintiff.

Richardson, Tyler & Troubh, Kevin Gillis (orally), Portland, for Swamp Fox Motor Inn.

Mitchell & Stearns, Kevin M. Cuddy (orally), Bangor, for Hardy's Trailer Sales.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS, VIOLETTE, and WATHEN, JJ.

GODFREY, Justice.

Claimant Christine Hardy brings this consolidated appeal from two pro forma judgments entered in Superior Court (Penobscot and Aroostook Counties), affirming the denial by the Workers' Compensation Commission of her two petitions for further compensation. The first sought an award of further compensation for total incapacity against Hardy's Trailer Sales, Inc. as the result of a work-related injury received on August 5, 1976. The second sought an award of compensation against Swamp Fox Motor Inn as the result of a work-related injury received on July 23, 1977. On appeal, claimant contends that the burden of proof applied by the Commissioner to her petitions was erroneous as a matter of law and that his findings of fact are not supported by competent evidence. We vacate the pro forma judgments and remand the case to the Commission.

I.

On August 5, 1976, Christine Hardy sustained a work-related injury to her lower back while employed as a salesperson by Hardy's Trailer Sales, Inc., in Brewer. Surgery was performed on her lower back,[1] and pursuant to a Commission-approved agreement, she received benefits for total incapacity from August 7, 1976 to October 15, 1976. Benefits were discontinued on October 15, 1976, by agreement, when Mrs. Hardy returned to work.

Shortly thereafter, Mrs. Hardy left Hardy's Trailer Sales and began work as the restaurant manager for the Swamp Fox Motor Inn in Presque Isle. While lifting trays and tables at the Swamp Fox, Mrs. Hardy suffered further injury to her back on July 23, 1977. After a period of recuperation, she returned to work at the Swamp Fox on December 28, 1977 at the identical weekly wage she had earned before her injury. She testified, however, that she could no longer do any heavy work and that her employment consisted solely of supervisory and light office work.

On June 22, 1978, Mrs. Hardy filed with the Workers' Compensation Commission a petition against Swamp Fox seeking an award of compensation for the July 23, 1977 injury. That same day she also filed (1) a petition for further compensation against Hardy's Trailer Sales based on the August 5, 1976 injury and (2) a petition against Hardy's Trailer Sales to determine the extent of permanent impairment resulting from the August 5, 1976 injury.

On November 7, 1978, the Commissioner awarded Mrs. Hardy compensation against Hardy's Trailer Sales for 20% permanent impairment to her back and 5% permanent impairment to her left leg as a result of the August 5, 1976 injury. By decree entered on February 9, 1979, the Commissioner found, on the basis of a stipulation of facts filed by the parties, (1) that Mrs. Hardy had sustained a work-related injury at the Swamp Fox on July 23, 1977, consisting of the "onset of pain in the back and down the left leg which was the exacerbation of a pre-existing condition," and (2) that as a result of conservative treatment her symptoms had so improved that she was able to return to work on December 28, 1977, without having suffered any permanent impairment as a result of the July 23, 1977 injury. He accordingly awarded her benefits against Swamp Fox for total disability only for the period from July 23, 1977 to December 28, 1977. No action was taken at that time on the June 22, 1978 petition for further compensation against Hardy Trailer Sales.

1. Mrs. Hardy had also undergone lower back surgery in 1970.

In March, 1978, the Swamp Fox was sold, and Mrs. Hardy discontinued working there. She returned to the Bangor area and began working at Hardy's Furniture, earning $2,716.50 there in 1978. She also worked intermittently for Hardy's Trailer Sales in 1978 and again in 1979, escorting the delivery of mobile homes and doing some office work. Although she did no heavy work, Mrs. Hardy testified that she was unable to work long at these various jobs because of the pain in her lower back.

On November 4, 1980, Mrs. Hardy filed a petition for further compensation against Swamp Fox based on her injury of July 23, 1977. This petition was consolidated for hearing with her petition for further compensation filed June 22, 1978 against Hardy's Trailer Sales.

At the hearing on the consolidated petitions for further compensation, the only two witnesses were Dr. John Adams, an orthopedic surgeon, and Mrs. Hardy. Dr. Adams testified that he first saw Mrs. Hardy in August, 1978, and that he has been treating her ever since. He felt that Mrs. Hardy could not do work "requiring lifting, bending, repetitive twisting, pushing heavy objects. She could sit for moderate periods of time, stand for moderate periods of time and walk fairly well in any job that she was required to do." Dr. Adams stated as his opinion that both the August, 1976, and July, 1978, injuries contributed to Mrs. Hardy's present condition. Yet he stated his belief that the July 23 injury had simply aggravated an already existing condition. Dr. Adams explained Mrs. Hardy's symptoms as the result primarily of nerve root irritation and scarring caused by surgery performed in 1970 and in 1976. However, Dr. Adams admitted that his opinions on the causal connection between the respective injuries and the continuing pain experienced by Mrs. Hardy were guesses, since he did not examine her until about a year after the July 23 injury.

At the hearing, Mrs. Hardy testified on the history of her employment since 1976 and the reason she was unable to continue working at Hardy Furniture and other jobs following her return from Presque Isle. She testified that since 1978 she had diligently looked for work, having applied unsuccessfully for positions in restaurant management in several area establishments and registered with an employment agency. She said that at least one restaurant had made it clear that because of her back problems she would be unable to handle the work involved in the available position. She had also sought employment with a travel agency. But for a short stint as a salesperson with Friedman's Furniture during its going-out-of-business sale in 1980, Mrs. Hardy remained unemployed after she was forced to leave Hardy's Furniture because of back pain.

In two separate decrees entered on April 21, 1980, the Commissioner denied both petitions for further compensation. In the decree denying claimant's petition for further compensation against Swamp Fox, he found as follows:

By decree dated February 9, 1979 it was established that Mrs. Hardy had recovered *her* full work capacity which is confirmed by the fact that she returned to her former job as a restaurant manager at Swamp Fox Motor Inn at her previous salary and carried on successfully until the end of March 1978 when the job itself was abolished because the business was sold.

The Commissioner then said:

The obligation to establish by medical evidence that since December 1977 [when Mrs. Hardy had returned to work at the Swamp Fox] her back condition degenerated and that her work capacity was thereby decreased as a result of her work related injury rests with the petitioner.

Finding that the medical testimony failed to satisfy that burden of proof, the Commissioner denied the petition for further compensation against Swamp Fox.

The Commissioner's findings with respect to Hardy's Trailer Sales were parallel to those in the Swamp Fox decree. In short, he found that Mrs. Hardy had regained her full work capacity on October 15, 1976 (when she had returned to work at Hardy's

Trailer Sales), that she had the burden of proving by medical evidence that her work capacity had decreased since October 15, 1976, as a result of her August 5, 1976 work-related injury, and that the medical testimony was insufficient to satisfy the burden of proof. Accordingly, he denied the petition against Hardy's Trailer Sales.

The Commissioner entered substantially identical specific findings of fact and conclusions of law with respect to the two decrees. The Superior Court affirmed the Commission's decisions pro forma.

## II.

On appeal, claimant first contends that the Commissioner erred in imposing on her the burden of showing by medical evidence a change in her physical condition from the date of her return to work, caused by her work-related injury and resulting in a decreased work capacity. She argues that since the evidence clearly demonstrates that she returned to work after her injury of July 23, 1977, with a diminished work capacity, she is entitled to compensation for at least partial incapacity as a matter of law. *See Mailman v. Colonial Acres Nursing Home*, Me., 420 A.2d 217 (1980).

■ On a petition for further compensation the claimant has the burden of showing that he is either totally or partially incapacitated to earn as a result, in whole or in part, of a work-related injury. *See Comparetto v. Diaz Corp.*, Me., 431 A.2d 1326, 1327–28 (1981). A worker is entitled to compensation for partial incapacity under 39 M.R.S.A. § 55 (1978 & Supp.1981–1982) if his capacity to earn has been partly impaired as a result of a work-related injury. *McQuade v. Vahlsing, Inc.*, Me., 377 A.2d 469, 471 (1977). Moreover, even though a worker is not totally disabled in the medical sense, he may be entitled to compensation for total incapacity under 39 M.R.S.A. § 54 (Supp.1981–1982) if he is unable to find work because of his injury. *See Rugan v. Dole Co.*, Me., 396 A.2d 1003, 1005 (1979). In that case, the claimant bears the additional burden of establishing a causal connection between his partial medical disability and his inability to obtain employment. *See Crocker v. Eastland Woolen Mill, Inc.*, Me., 392 A.2d 32, 34–35 (1978).

■ These basic principles are equally applicable in a case where a worker, having suffered a compensable injury resulting in some physical limitation, has obtained post-injury employment and is later laid off for reasons unrelated to his injury. In such a case, precisely what must be shown by the worker on a petition for further compensation depends on whether he returned to work with or without a diminution in earning capacity. If his return to work was without a diminution in his earning capacity, he may establish his entitlement to further compensation by demonstrating a causal relationship between his inability to find work and his work-related physical limitation.[2] On the other hand, where there is competent evidence that the return to work was with diminished earning capacity, such an employee is entitled to compensation for partial loss of earning capacity if he is subsequently laid off. *See Mailman v. Colonial Acres Nursing Home*, Me., 420 A.2d 217 (1980).[3] Such an employee would be

2. In *Rugan v. Dole Co.*, Me., 396 A.2d 1003, 1004–05 (1979), the employee was injured in a work-related accident and thereby disabled. He later returned to work and after being laid off because of a lack of work was reemployed at another job until that work ended. Rugan petitioned for further compensation after unsuccessfully searching for employment. It was found that Rugan's employment after his injury established marketability for his own talents (as an electrician) and patently demonstrated an undiminished earning capacity. Accordingly, this Court vacated the decision awarding

compensation, finding no competent evidence in the record that Rugan's subsequent unemployment was causally related to his disability. *Rugan*, 396 A.2d at 1006.

3. In *Mailman*, the employee suffered a compensable back injury while working as a cleaning woman. Under an approved agreement she received compensation for total incapacity until she began work at a textile mill as a winding machine operator. Mailman continued at that job full-time, despite continued discomfort and pain in her back, until she was laid off because of a slow-down. Later she unsuccessfully

entitled to compensation for total loss of earning capacity on a further showing of reasonable, good-faith efforts to secure employment within his physical limitations. *See Crocker*, 392 A.2d at 34–35.

In this case, it seems that the Commissioner misunderstood what claimant needed to show in order to be entitled to an award of further compensation. Having found that Mrs. Hardy returned to work with an undiminished earning capacity, the Commissioner stated that she had the burden of showing by medical evidence that, as a result of her work-related injury, her physical condition had deteriorated since she returned to work.

From the analysis set forth above, however, it appears that even if Mrs. Hardy returned to work with an undiminished earning capacity she need not show a medical change in her physical condition in order to establish diminished earning capacity entitling her to compensation when she was later laid off for reasons unassociated with her injury. All she needed to show was a causal relationship between her inability to find employment and any physical limitations resulting from her work-related injury. The Commissioner seems to have overlooked that possibility when he denied compensation on the ground that Mrs. Hardy had not demonstrated a change of medical condition. The case must therefore be remanded for reconsideration in the light of this opinion.

Our disposition of this issue makes it unnecessary to decide whether the Commissioner's specific findings of fact and conclusions of law are supported by competent evidence.

The entry is:

Pro forma judgments of Superior Court vacated.

sought new work. On a petition for further compensation, she was awarded compensation for partial incapacity. This Court found that the evidence, unlike that in *Rugan*, clearly reflected a diminished earning capacity on the part of Mailman when she began her post-injury employment at the textile mill. Since Mailman had produced direct medical evidence of impaired physical ability with consequent re-

Remanded to the Superior Court for entry of an order remanding to the Workers' Compensation Commission for further proceedings consistent with the opinion herein.

It is further ordered that the employer pay to the employee an allowance of $550.00 for his counsel fees, plus his reasonable out-of-pocket expenses for this appeal.

All concurring.

duced earning capacity caused by her industrial injury, we upheld the Commission's award of compensation for partial incapacity. The Commission had refused to award Mailman compensation for total incapacity because she had not made reasonable efforts to secure employment within the limits of her disability. *Mailman*, 420 A.2d at 220.