Robert COUSINS

v.

GEORGIA–PACIFIC CORPORATION.

Supreme Judicial Court of Maine.

Argued Sept. 3, 1991.

Decided Nov. 8, 1991.

Paul H. Sighinolfi (orally), Jane E. Skelton, Rudman & Winchell, Bangor, for plaintiff.

Kevin M. Cuddy (orally), Cuddy & Lanham, Bangor, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, and COLLINS, JJ.

ROBERTS, Justice.

Georgia–Pacific Corporation appeals from a decision of the appellate division affirming the restoration of compensation to Robert Cousins by the Workers' Compensation Commission. Georgia–Pacific contends that the termination of Cousins's employment for fault precludes a finding of causal connection between his original work injury and his current earning capacity. Because we reject that contention, we affirm the Appellate Division's decision.

I.

On February 7, 1984, Robert Cousins sustained a severe injury to his left hand and arm while working at Georgia–Pacific Corporation. His hand was pulled into a paper machine causing him to lose his three middle fingers and injure his wrist, arm and shoulder. Following surgery he was left with two fingers in the position of the thumb and small finger on his left hand, severely limiting his ability to grasp.

In February 1985, Cousins returned to a light-duty position at Georgia–Pacific. After returning to work Cousins received workers' compensation benefits at varying rates. On June 9, 1986, Cousins called the mill and reported that he was having problems with his arm and would not be in to work. On that day Cousins participated in a golf tournament. After learning about the golf outing, Georgia–Pacific terminated Cousins for "dishonesty," a violation of the union contract. Thereafter Georgia–Pacific discontinued Cousins's workers' compensation payments.

Cousins filed a petition for restoration of compensation based on his injury and its effect on his earning capacity. Cousins sought compensation benefits for the period after his termination. The Commission granted partial incapacity benefits at a rate of 35% from April 1989,[1] to the present and continuing, recognizing the difference between his pre-injury earnings and his post-Georgia–Pacific earnings. The Commission found that Cousins should not be barred from receiving benefits because of his "fault" in the termination. The Appellate Division affirmed, agreeing with the Commission regarding Cousins's partial incapacity benefits and stating that "[t]he fact that the employee was unable to work at Georgia–Pacific due to the violation of

---

1. Cousins's partial compensation benefits began in April 1989 because he did not establish any entitlement to more benefits than he had already received from June 1986, the date of his termination, to April 1989.

the contract is not determinative of the issue regarding the employee's level of incapacity.... The employee's alleged dishonesty, while playing a role in the arbitration process involving the contractual violation, should not preclude a finding of earning incapacity when it has been shown that the employee's incapacity remains causally related to his work-related injury."

## II.

There is no dispute that at the termination of his employment Cousins still had a degree of physical disability that prevented his return to his original work assignment. Georgia–Pacific argues that, but for his malfeasance, Cousins would still be earning at his pre-injury rate. As a result, Georgia–Pacific says, he cannot attribute his present diminished earning capacity to the physical disability that resulted from his injury. We disagree.

Even assuming that Cousins was terminated for willful misconduct, we conclude that circumstance does not of itself preclude the restoration of workers' compensation. Courts in other jurisdictions have held that an employee's right to compensation for injury is not destroyed because the employer has terminated the employee. *See Johnston v. Super Food Services*, 461 So.2d 169, 170 (Fla.App.1984) (award of compensation benefits is not precluded simply because the loss of earning capacity, occurring after a period of successful post-injury employment, is attributable in some part to a non-injury-related factor such as excessive absenteeism); *Smith v. General Motors Assembly Division*, 18 Md.App. 478, 307 A.2d 725, 730 (1973) (no requirement that injured employee be free of any fault, other than intoxication or willful misconduct causing the injury, in order to recover compensation); *Aldrich v. ASARCO, Inc.*, 221 Neb. 126, 375 N.W.2d 150, 152 (1985) (an employee who returned to work after a back injury and was later discharged was entitled to compensation). In these cases, the fact of termination or the reason for it is irrelevant if the employee sustained continued incapacity from a compensable injury.

The Legislature has specifically addressed the issue of willful misconduct that *causes* work-connected injury. *See* 39 M.R.S.A. § 61 (1989). That section provides that "No compensation or other benefits shall be allowed for the injury or death of an employee ... occasioned by his willful intention to bring about an injury or death of himself or of another...." 39 M.R.S.A. § 61. Thus, the Legislature has seen fit to penalize a very limited form of misconduct and we deem it inappropriate for us to expand that narrow provision.

The entry is:

Decision of the Appellate Division affirmed.

It is ordered that the employer pay to the employee $750 for attorney fees plus the reasonable out-of-pocket expenses for this appeal.

All concurring.