1998 ME 72

#### Freeman SAUNDERS

v.

#### MacBRIDE DUNHAM MANAGEMENT

and

#### Hanover Insurance Co.

Supreme Judicial Court of Maine.

Argued Feb. 3, 1998.

Decided April 6, 1998.

James MacAdam (orally), McTeague, Higbee, MacAdam, Case, Watson & Cohen, Topsham, for Employee.

Robert Brooks (orally), Verrill & Dana, Portland, for Employer.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, LIPEZ, and SAUFLEY, JJ.

LIPEZ, Justice.

[¶ 1] The employee, Freeman Saunders, appeals from a decision of the Workers' Compensation Board denying the employer's petition for review and awarding continuing partial benefits based on the difference between his 1990 average weekly wage and his post-injury wages in 1997. 39 M.R.S.A. § 55–B (Supp.1990), *repealed and replaced by* P.L.1991, ch. 615, § D–7. Saunders contends that to compute his loss of earning capacity accurately, the Board should have used the Board's inflation multipliers to "deflate" his 1997 earnings in terms of 1990 dollars. We disagree and affirm the decision of the Board.

## I.

[¶ 2] Saunders suffered a work-related injury on August 2, 1990 while employed by MacBride Dunham Management. His average weekly wage at the time of the injury was $422.70. MacBride accepted the injury and paid Saunders varying rates benefits until September 1992, when the parties agreed to a fixed level of partial benefits in the amount of $252. MacBride filed a petition for review in 1993 seeking to reduce benefits, contending that the employee's work related incapacity had ended. The parties stipulated that Saunders earned $240 in his post-injury employment at the time of the hearing. Applying the Board's inflation multipliers, Saunders contended that his post-injury earnings, deflated for inflation, would be $197.19 as expressed in 1990 dollars and would result in an earning incapacity of 53%. The Board denied the employer's petition and awarded continuing partial benefits, but rejected the employee's computation of earning incapacity. Comparing his pre-injury wages, unadjusted for inflation, with his stipulated post-injury earnings, the Board arrived at a 43% earning incapacity. The Board denied the employee's motion for findings of fact, and we granted his petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1997).

## II.

[¶ 3] Pursuant to former section 55–B, applicable to the 1990 injury, benefits are calculated as two-thirds of the difference between the employee's pre-injury average weekly wage and what the employee is "able to earn" after the injury. 39 M.R.S.A. § 55–B (Supp.1990), *repealed and replaced by* P.L. 1991, ch. 615, § D–7. Although we have stated that an employee's actual wages after an injury are prima facie evidence of the employee's post-injury earning capacity, *Fecteau v. Rich Vale Constr., Inc.*, 349 A.2d 162, 165 (Me.1975), post-injury earnings are not dispositive. In *Severy v. S.D. Warren Co.*, 402 A.2d 53, 55 (Me.1979), we cited Professor Larson's treatise, 1C A. Larson, *The Law of Workmen's Compensation*, § 57.21 (1993), for the principle that "the mere fact, standing alone, that the employee is earning the same after the injury as he did before will not bar an award for partial disability." Saunders now relies on section 57.21(d) of Larson's treatise to contend that the effects of inflation must be discounted in determining post-injury earning capacity.[1] We have

---

1. Larson states that post-injury developments, such as the *"increase in general wage levels since the time of accident;* claimant's own greater maturity or training, longer hours worked by claimant after the accident; payment of wages disproportionate to capacity out of sympathy to claimant; and the temporary and unpredictable character of post-injury earnings,"* tend to inflate an employee's post-injury earnings in relation to that employee's pre-injury wage. *Id.*

never held, however, that inflationary factors must be discounted in determining post-injury earning incapacity, and we expressly declined to address this issue in *Severy* because it had not been preserved for appeal.[2]

[¶ 4] Moreover, the Legislature has chosen to address the issue of inflation by statutory enactment. Former 39 M.R.S.A. § 55–A (Supp.1987), repealed by P.L.1987, c. 559, Pt. B, § 29, provided for the annual adjustment of partial benefits according to inflationary (or deflationary) fluctuations in the state average weekly wage. This statutory inflation adjustment was repealed in 1987. P.L.1987, ch. 559, Pt. B, §§ 29, 30, *codified as* 39 M.R.S.A. § 55–B. The enactment of a statutory inflation adjustment for partial incapacity benefits, and the subsequent repeal of that adjustment, reflects a legislative intent to remove any consideration of inflation with respect to partial benefits.

[¶ 5] Saunders contends, however, that he is not strictly seeking an "inflation adjustment" as that term has been used in the past, but an adjustment of his post-injury earnings for purposes of arriving at an accurate estimate of lost earning capacity. As Saunders contends, the statutory inflation adjustment was usually applied directly to the employee's partial benefits and did not affect the initial determination of earning capacity. *Bernard v. Cives Corp.*, 395 A.2d 1141, 1148 (Me.1978). As the employer notes, however, in certain circumstances when the employee's post-injury partial benefits varied from week-to-week, the inflation adjustment was applied directly to the employee's pre-injury average weekly wage in order to fairly reflect the effect of inflation on the employee's benefits. *Lagasse v. Hannaford Bros. Co.*, 497 A.2d 1112, 1116 (Me.

1985). The purpose and the effect of the adjustment in either case was the same—to protect "injured workers against shrinkage in the value of the dollar caused by inflation, while simultaneously guaranteeing that during deflationary economic conditions the entire system would not suffer from inability to make appropriate adjustments in compensation payments." *Bernard*, 395 A.2d at 1148.

[¶ 6] In 1987, however, the Legislature determined that, in order to reduce compensation payments generally and to prevent insurance carriers from withdrawing business from the state, it was necessary to discontinue the adjustment of partial benefits for inflation. L.D.1929, Emergency Preamble (113th Legis.1987). To permit the consideration of inflation in the determination of earning incapacity on a petition for review would defeat this legislative purpose and could potentially lead to an unwarranted increase in the filings of petitions for review by employees seeking such an adjustment.

The entry is:

Decision of the Workers' Compensation Board affirmed.

---

(emphasis added). A strict comparison, therefore, between pre- and post-injury wages may not always result in an accurate reflection of an employee's actual loss of earning capacity due to an injury. *Id.* Larson states that "[o]nly by the elimination of all variables except the injury itself can a reasonably accurate estimate be made of the impairment of earning capacity to be attributed to that injury." *Id.*

2. We stated:
    The employee also attacks the Commissioner's decree for failing to take into account the general rise in salaries caused by the inflation

which the region, and indeed the country, has experienced since the employee was injured in 1974. This argument holds that with the decline of purchasing power a dollar-for-dollar comparison of the employee's current salary with his salary in 1974 would be extremely misleading.... Our examination of the record reveals that the employee did not advance this argument before the Commissioner, [and therefore the issue was not preserved for appeal].

*Severy*, 402 A.2d at 56.