1998 ME 169

## Jeanette B. DUFOUR

v.

## INTERNAL MEDICINE ASSOCIATES and Hanover Insurance Co.

Supreme Judicial Court of Maine.

Argued June 9, 1998.

Decided July 7, 1998.

Jeffrey Neil Young (orally), McTeague, Higbee, MacAdam, Case, Watson & Cohen, Topsham, for employee.

Michael Richards (orally), Troubh, Heisler & Piampiano, P.A., Portland, for employer.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ.

RUDMAN, Justice.

[¶ 1] Internal Medicine Associates (IMA) appeals from the decision of the Workers' Compensation Board granting Jeanette B. Dufour's petition for award related to a 1990 injury. IMA contends that, because Dufour had returned to her pre-injury employment without a loss of earnings, and because she voluntarily quit her post-injury employment in 1994, any resulting loss of earning capacity is due to her decision to quit and not due to her work-related injury.[1] We disagree and affirm the decision.

[¶ 2] Dufour suffered a work-related carpal tunnel injury on September 10, 1990, while working as an office manager for IMA. She returned to work without a reduction of earnings, and was able to comply with her doctor's recommendation to reduce typing and keyboard work by delegating data entry assignments to other employees. Dufour left her employment in 1994 for reasons unrelated to her injury. Dufour found employment at Mechanical Systems Engineers roughly one week after leaving IMA. Eight months later, she quit her position with Mechanical Systems Engineers in order to accept a position at Central Maine Orthopedics. Dufour was terminated from this latter employment after a month. In February 1995, she obtained temporary employment through Bonney Personnel performing data entry work, during which she suffered a significant aggravation of her 1990 work-injury.

[¶ 3] Dufour filed a petition for award against IMA for the September 10, 1990 injury. In 1997, the Board granted Dufour's petition, finding that:

> ... Dufour left her job with [IMA] as of January 15, 1994 for reasons unrelated to her work injury. At the time she left her job, she was physically capable of performing it. I believe her testimony that she periodically suffered symptoms in her hands and wrists between the date of injury and the time she left, but I note she never lost time from work.

The Board also found that, although Dufour's aggravation injury in 1995 resulted in a short-term period of increased incapacity, "[a]s of May 9, 1995, she was back to her baseline level of symptoms" that she had experienced prior to her 1995 aggravation injury.[2] The Board concluded further that Dufour's earnings of $400 a week at Mechan-

---

1. Because Dufour's injury occurred prior to January 1, 1993, IMA concedes that 39–A M.R.S.A. § 214 (Supp.1997) does not apply. P.L.1991, ch. 885, § A–10.

2. IMA filed a petition for award against Bonney Personnel for Dufour's 1995 injury. IMA's petition was resolved by a consent decree in 1996.

ical Engineering Systems accurately reflects her current post-injury earning capacity. The Board awarded short-term total and fifty percent continuing partial incapacity benefits based on the difference between her 1990 average weekly wage and her post-injury earning capacity of $400 a week.[3] We granted IMA's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1997).

[¶ 4] IMA does not dispute that Dufour's entitlement to partial benefits for her 1990 injury is governed by former section 55–B, which provided: "While the incapacity for work resulting from the injury is partial, the employer shall pay the injured employee a weekly compensation equal to 2/3 the difference, *due to the injury,* between the employee's" pre-injury earnings and what the employee "is *able to earn* after the injury...." 39 M.R.S.A. § 55–B (Supp.1990) (effective for injuries occurring after September 30, 1989 and before October 17, 1991), *repealed and replaced by* P.L.1991, ch. 615, § D–7 (emphasis added). IMA contends that, because Dufour voluntarily quit her employment, any loss of earnings was not "due to the injury," but due to her own voluntary decision to quit. IMA relies on *Coty v. Town of Millinocket,* 393 A.2d 156, 157 (Me.1978). In *Coty,* we affirmed the denial of the employee's petition for further compensation, based on the finding that his unsuccessful work-search after being laid off from his post-injury job was the result of a general economic downturn, and not due to the employee's incapacity. *Id.; see also* 1C A. Larson, *The Law of Workmen's Compensation,* § 57.63, at 10–492.11–12 (1993) ("[l]oss of employment should not be deemed due to disability if a worker without the disability would lose employment or suffer a reduction in earnings under the same economic conditions").

[¶ 5] We have stated, however, that "evidence of actual wages is a useful indicator [of post-injury earning capacity], not a talisman" and "the mere fact, standing alone, that the employee is earning the same after the injury as before will not bar an award for partial disability." *Severy v. S.D. Warren Co.,* 402 A.2d 53, 55 (Me.1979); *see also Hardy v. Hardy's Trailer Sales, Inc.,* 448 A.2d 895, 898–99 (Me.1982); *Mailman v. Colonial Acres Nursing Home,* 420 A.2d 217, 220–21 (Me.1980); 1C A. Larson, *The Law of Workmen's Compensation,* § 57.21(c) (1993). The Board found in this case that, although Dufour was able to return to her pre-injury employment with IMA at her pre-injury wage, those earnings did not reflect her true capacity to earn after her injury. Based on competent evidence, the Board concluded that her actual ability to earn for this period is best reflected by her earnings of $400 a week at Mechanical Engineering Systems after leaving IMA. This is a factual determination which we will overturn only if the evidence compels otherwise. *See Smith v. Great Northern Paper, Inc.,* 636 A.2d 438, 439 (Me.1994). In *Coty,* 393 A.2d at 157, by contrast, the employee provided no evidence of a diminished earning capacity. *See also Mailman,* 420 A.2d at 220.

[¶ 6] IMA contends, however, that even if $400 a week were all that Dufour is able to earn in the general labor market, Dufour suffered no loss of earning capacity because IMA had accommodated her injury and she was "able to earn" her pre-injury wage. While the Board could have found that Dufour was able to earn a wage reflecting the wage she was earning at the time she left her employment with IMA, it found other facts more compelling and concluded that her current earning capacity is less. The statute does not compel the Board to set her current earning capacity at the amount she was earning when she left IMA.

[¶ 7] IMA contends that its interpretation is consistent with the purpose of the Act to encourage employers to accommodate their employees' injuries and return them to employment at or near their pre-injury wage. Although such a result would encourage employers to accommodate injured employees and return them to work, it could also have a

---

**3.** The Board did not award incapacity benefits for the period between her termination of employment with IMA and her aggravation injury in 1995. Dufour has not appealed from that decision.

chilling effect on an employee's willingness to return to work in a specially adapted position. We find no support in former section 55–B for IMA's contention, and therefore affirm the decision of the Board.[4]

The entry is:

Decision of the Workers' Compensation Board affirmed.

4. IMA's additional contention that it is entitled to terminate benefits pursuant to 39–A M.R.S.A. § 218(5) (Supp.1997), even in the absence of a petition for reinstatement, was recently rejected by our decision in *Thompson v. Claw Island Foods,* 1998 ME 101, ¶¶ 6, 16–19, 713 A.2d 316.