2001 ME 15

John BERNARD

v.

MEAD PUBLISHING PAPER
DIVISION

Supreme Judicial Court of Maine.

Argued Oct. 3, 2000.

Decided Jan. 24, 2001.

Elizabeth Ernst (orally), Douglas, Denham, Buccina & Ernst, Portland, for employee.

John H. King Jr. (orally), Norman, Hanson & DeTroy, LLC, Portland, for employer.

Panel: WATHEN, C.J., and
CLIFFORD, RUDMAN, DANA,
SAUFLEY, ALEXANDER, and
CALKINS, JJ.

CLIFFORD, J.

[¶ 1] Mead Publishing Paper Division appeals from a decision of a Hearing Officer of the Workers' Compensation Board granting the petition for restoration of John Bernard and awarding ongoing partial benefits. Mead contends: (1) that Bernard is not entitled to benefits for incapacity because he did not experience a reduction in wages following his injury and was terminated from his employment for fault, and (2) that it was error for the Hearing Officer to apply the inflation factor to adjust Bernard's pre-injury wage, instead of first calculating the employee's weekly benefits based on a comparison of his unadjusted wages and then applying the inflation factor to the amount of benefits. We affirm the Hearing Officer's determination of incapacity, but agree with Mead that the Hearing Officer erred in the calculation of the inflation adjustment. Accordingly, we vacate the decision.

[¶ 2] Bernard suffered a work-related injury on May 19, 1987, when he was

struck on the ankle by a five-hundred pound valve. The injury ultimately led to three ankle surgeries. At the time of his injury, Bernard was employed by Mead as a supervisor of an in-house construction and repair crew. After the injury, Bernard returned to Mead and worked for seven years without any reduction in his pre-injury wages. As a supervisor, Bernard was able to, and did, adjust his duties to accommodate the physical limitations resulting from his injury. Those limitations precluded Bernard from engaging in excessive walking and stair or ladder climbing. Sometime after 1991, Bernard's position was eliminated and he was transferred to the mill "Planning Department," again without a reduction in pay. Bernard's flexibility in his supervisory role again permitted him to minimize his duties and accommodate his work restrictions.

[¶ 3] Bernard was subsequently terminated from employment in 1998 for violating a company no-smoking policy.[1] He filed a petition for restoration in September of 1998. After a good faith work search, he obtained temporary part-time employment doing carpentry and remodeling work at Harvard University in March of 1999, establishing a post-injury work-capacity of $560 per week.

[¶ 4] The Hearing Officer granted Bernard's petition for restoration in August of 1999. Finding that Bernard was able to adjust his post-injury work to accommodate his injury, the Hearing Officer rejected Mead's argument that Bernard's post-injury employment for seven years with no loss of earnings required a finding that he suffered no loss of earning capacity. *See Dufour v. Internal Med. Assocs.*, 1998 ME 169, ¶¶ 5–7, 713 A.2d 339, 340. The Hearing Officer also concluded that because Bernard's injury occurred prior to 1993 and his entitlement to partial benefits is governed by former title 39 M.R.S.A. § 55–A, *repealed by* P.L.1987, ch. 559, Pt.

B, §§ 29, 30, *codified as* 39 M.R.S.A. § 55–B (1989) (effective Nov. 20, 1987), *repealed by* P.L.1991, ch. 885, § A–7, his termination from employment for fault, even if he had engaged in conduct justifying termination, did not require a termination of benefits. *See Cousins v. Georgia–Pacific Corp.*, 599 A.2d 73, 74 (Me.1991).

[¶ 5] The parties agree that Bernard's average weekly wage at the time of his injury was $870.15. In order to adjust Bernard's benefits for inflation pursuant to former 39 M.R.S.A. § 55–A, *repealed by* P.L.1987, ch. 559, Pt. B, § 29, the Hearing Officer applied the inflation adjustment to *his pre-injury wage* to arrive at an adjusted average weekly wage of $1360. The Hearing Officer then calculated two-thirds of the difference between Bernard's adjusted pre-injury weekly wage of $1360 and his post-injury earning capacity of $560 a week to arrive at a weekly compensation of $533.33.

[¶ 6] The Hearing Officer granted the employer's motion for further findings of fact, but did not significantly alter his decision. We granted Mead's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Pamph.1999).

I.

■ [¶ 7] Mead contends that, because Bernard returned to work after his injury with no reduction in his pre-injury wage, it was error for the Hearing Officer to conclude that Bernard suffered a loss of earning capacity as a result of his injury. We rejected a similar argument in *Dufour*, 1998 ME 169, ¶¶ 5–7, 713 A.2d at 340–41. In *Dufour*, the employee suffered a carpal tunnel injury while employed as an office supervisor. *Id.* ¶ 2, 713 A.2d at 339. She returned to her supervisory position without a reduction of earnings and accommodated her injury by "reduc[ing] typing and keyboard work by delegating data entry

---

1. The Hearing Officer found that Bernard was terminated for "smoking with another supervisor and some hourly workers in violation of company policy, an allegation which Mr. Bernard denied."

assignments to other employees." *Id.* As we stated in *Dufour,* " 'evidence of actual wages is a useful indicator [of post-injury earning capacity], not a talisman' and 'the mere fact, standing alone, that the employee is earning the same after the injury as before will not bar an award for partial disability.' " *Id.* ¶ 5, 713 A.2d at 340 (quoting *Severy v. S.D. Warren Co.,* 402 A.2d 53, 55 (Me.1979)). We concluded that the ability of the employee to earn her pre-injury wage did not preclude a finding of loss of earning capacity when the employee was able, under the special circumstances of her employment, to accommodate her work restrictions. *Id.* at ¶¶ 5–7, 713 A.2d at 340–41.

[¶ 8] Bernard, like the employee in *Dufour,* was a supervisor who could accommodate his physical limitations resulting from the injury by effectively delegating all but "light-duty" assignments. It was not error for the Hearing Officer to find that Bernard continues to suffer a work-incapacity, notwithstanding his return to employment at his pre-injury wage for several years following his injury.

■ [¶ 9] Mead contends that Bernard's termination for fault requires a finding that Bernard is not incapacitated as a result of his injury. As the Hearing Officer concluded, Bernard was injured in 1987 and his entitlement to partial benefits is governed by former 39 M.R.S.A. § 55–A, *repealed by* P.L.1987, ch. 559, Pt. B, § 29. Pursuant to former title 39, an employee's termination for fault does not constitute grounds for discontinuing workers' compensation benefits. *See Bureau v. Staffing Network, Inc.,* 678 A.2d 583, 589–90 (Me. 1996); *Cousins v. Georgia–Pacific Corp.,* 599 A.2d 73, 74 (Me.1991); *Cote v. Great Northern Paper Co.,* 611 A.2d 58, 59 (Me. 1992). Accordingly, we affirm the Hearing Officer's determination that Bernard remains incapacitated.

2. The inflation factor is calculated "by divid-

## II.

■ [¶ 10] Mead also contends that the Hearing Officer erred in its computation of the inflation adjustment. Former 39 M.R.S.A. § 55–A provides, in pertinent part:

While the incapacity for work resulting from the injury is partial, the employer shall pay the injured employee a weekly compensation equal to ⅔ the difference, due to the injury, between his average gross weekly wages, earnings or salary before the injury and the weekly wages, earnings or salary which he is able to earn after the injury, .... *This weekly compensation shall be adjusted annually* so that it continues to bear the same percentage relationship to the state average weekly wage, as computed by the Maine Unemployment Insurance Commission, as it did at the time of the injury, but in no case may the annual adjustment exceed the lesser of 5% or the actual percentage increase in the state average weekly wage for the previous year. The annual adjustment required by this section shall be made on the anniversary date of the injury, ....

....

39 M.R.S.A. § 55–A, *repealed by* P.L.1987, ch. 559, Pt. B, § 29 (emphasis added).

[¶ 11] The Hearing Officer applied the inflation adjustment to Bernard's pre-injury wage and arrived at an adjusted average weekly wage of $1360. To determine Bernard's weekly compensation rate of $533.33, the Hearing Officer calculated two-thirds of the difference between his adjusted average weekly wage of $1360, and his post-injury earning capacity of $560. As Mead contends, the express language of section 55–A provides that the employee's *"weekly compensation* shall be adjusted annually"; it does not authorize the Hearing Officer to adjust the employee's average weekly wage.

[¶ 12] For total incapacity benefits, it makes no difference whether the inflation factor [2] is applied to the pre-injury wage or

ing (1) the State's average weekly wage on the

the compensation rate because total benefits equal two-thirds of the pre-injury wage multiplied by the inflation factor. In the case of partial incapacity benefits, however, it can make a substantial difference whether the inflation adjustment is made to the compensation rate or to the pre-injury wage.

[¶ 13] The statute provides that the inflation factor is applied to the compensation rate, *Allen v. Bath Iron Works Corp.*, 1999 ME 57, ¶ 7, 728 A.2d 121, 123; *Saunders v. MacBride Dunham Mgmt.*, 1998 ME 72, ¶ 5, 708 A.2d 1030, 1032; *Lagasse v. Hannaford Bros. Co.*, 497 A.2d 1112, 1116–17 (Me.1985); *Bernard v. Cives Corp.*, 395 A.2d 1141, 1149–52 (Me.1978), and we have applied that language in keeping with the plain meaning of the legislation. Ordinarily, partial benefits are calculated by taking two-thirds of the difference between the unadjusted pre-injury and post-injury wages, and then multiplying that result by the inflation factor.[3] In calculating Bernard's benefits, however, the Hearing Officer applied the inflation factor to the pre-injury wage and determined Bernard's partial incapacity benefits by taking two-thirds of the difference between his pre-injury wage adjusted by the inflation factor, and his post-injury wages.

[¶ 14] In a very limited kind of case, when the employee's post-injury earnings vary from week-to-week, and the employee's benefits are calculated according to a "varying rates" formula, i.e., based on a weekly computation of the difference between pre- and post-injury wages, we have construed the statute to authorize the application of the inflation adjustment to the pre-injury average weekly wage pursuant to the so-called "Arnold formula." *Lagasse*, 497 A.2d at 1116. Pursuant to the Arnold formula, benefits are calculated by

first applying the inflation factor to the employee's average weekly wage and then subtracting the post-injury earning capacity from that adjusted wage.[4] *Id.* The Arnold formula is the only exception we have recognized to the general rule requiring application of the inflation factor to the employee's compensation, as opposed to the pre-injury wage. Moreover, in *Lagasse*, 497 A.2d at 1119, we made it clear that the Hearing Officer's approach was merely authorized; it was not required by the statute. Thus, the Arnold approach may be used, not in all varying rates cases, but only in those unique varying rates cases where calculation of compensation cannot rationally be undertaken otherwise.

[¶ 15] In contending that we should authorize the application of the inflation factor to other than the compensation rate and affirm the Hearing Officer's application of the inflation factor to the pre-injury wage, Bernard argues that the purpose of the inflation adjustment is to protect "injured workers against shrinkage in the value of the dollar caused by inflation, while simultaneously guaranteeing that during deflationary economic conditions, the entire system would not suffer from inability to make appropriate adjustments in compensation payments." *Bernard*, 395 A.2d at 1148. Bernard contends that, in cases such as his, it is fairer and more consistent with the legislative intent to apply the inflation factor to the pre-injury wage. He points out that when the employee's injury dates back many years, construing the statute to require that the inflation factor be applied to weekly compensation could result in the employee receiving no benefits at all if the post-injury wage is greater, due solely to the effects of inflation, than the uninflated pre-injury

---

most recent July 1st, by (2) the State's average weekly wage on the date of [the employee's injury]." *Lagasse v. Hannaford Bros. Co.*, 497 A.2d 1112, 1115 (Me.1985).

3. Partial benefits = ⅔ (Pre-injury—Post-injury wages) × inflation factor.

4. Partial benefits = ⅔ ((Pre-injury wage × inflation factor)—Weekly post-injury earnings).

wage.[5] Bernard contends that Hearing Officers should be entitled to flexibility in the application of the inflation factor to satisfy the purpose of the inflation adjustment in the statutory scheme. We disagree.

■ [¶ 16] Our workers' compensation law is "uniquely statutory." *Goff v. Central Maine Power Co.*, 1998 ME 269, ¶ 8, 721 A.2d 182, 185. An employee's entitlement to an adjustment of benefits for inflation is governed by, and limited by, express statutory language. *Saunders*, 1998 ME 72, ¶ 5, 708 A.2d at 1032. "[O]ur Legislature has chosen to specifically address the issue of inflation by statutory enactment."[6] *Id.* As we noted in *Allen v. Bath Iron Works Corp.*, 1999 ME 57, ¶ 7, 728 A.2d 121, 123, "both former sections 54–B and 55–A expressly provided for an adjustment of the employee's 'weekly compensation,' not the employee's pre-injury or post-injury wage." Except for the exceptional case of varying rates compensation where the Arnold formula may be applied, the inflation factor must be applied to the weekly compensation, and not to pre- or postinjury wages. *Id.*

[¶ 17] Although Bernard contends that the application of the Arnold formula in more cases would result in a compensation rate that better accounts for the effects of inflation, the plain language of the statute does not provide for a broad use of the Arnold formula, and the legislature has not seen fit to change that language. The Hearing Officer erred in first adjusting the employee's pre-injury wage and then determining the employee's compensation by calculating two-thirds of the difference between that adjusted wage and his post-injury wage. On remand, the Hearing Officer must first determine Bernard's rate of compensation by calculating two-thirds of the difference between his unadjusted pre- and post-injury wages, and then applying the inflation factor to that compensation rate to adjust his benefits for inflation.

The entry is:

Decision of the Hearing Officer of the Workers' Compensation Board vacated. Remanded to the Board for further proceedings consistent with this opinion.

DANA, J., with whom CALKINS, J., joins dissents and files opinion.

DANA, J., with whom CALKINS, J., joins, dissenting.

[¶ 18] I respectfully dissent. Because the Court considers itself a prisoner of *Allen v. Bath Iron Works Corp.*, 1999 ME 57, ¶ 7, 728 A.2d 121, 123, it produces a decision that makes no sense.[7] Unlike the

---

5. In the present case the employee's uninflated wage of $870 exceeds the current post-injury wage of $560.

6. The inflation adjustment for partial incapacity benefits was first created by statutory language in 1971. *See* P.L.1971, ch. 225, § 3, *codified as* 39 M.R.S.A. § 55 (Pamph.1973), *repealed by* P.L.1985, ch. 372, Pt. A, § 18. In 1985 the annual inflation adjustment for partial incapacity benefits was capped at five percent. *See* P.L.1985, ch. 372, Pt. A, § 19, *codified as* 39 M.R.S.A. § 55–A (1987), *repealed by* P.L.1987, c. 559, Pt. B, § 29. The inflation adjustment for partial incapacity benefits was repealed in 1987. *See* P.L.1987, c. 559, Pt. B, §§ 29, 30, *codified as* 39 M.R.S.A. § 55–B (Pamph.1988), *repealed by* P.L.1991, ch. 885, § A–7.

7. In *Allen*, we relied, in part on our decision in *Lagasse v. Hannaford Bros. Co.*, 497 A.2d 1112, 1116–17 (Me.1985), in which we affirmed the use of the "Arnold Formula" in cases when an employee's partial incapacity benefits vary from week-to-week. We stated in dicta that "the parties here are in agreement that, when incapacity is set at a fixed percentage by agreement or decree, section 55 is complied with by simply and directly applying the [inflation] factor to the weekly compensation rate payable at a fixed rate." *Id.* While acknowledging that this is the common approach, we rejected the employer's argument that the statutory language requires such a result in all cases: "We do not agree with [the employer] that [the statute] by its verbal formulation requires the adjustment to be made in one and only one way, to the exclusion of the *Arnold* formula." *Id.* at 1117. We stated that "the language of [the partial incapacity statute] should not be parsed as an isolated grammatical exercise,"

statute at issue in *Allen*, former 39 M.R.S.A. § 55–A intends that the workers' compensation benefit (two-thirds the difference between pre- and post-injury wages) be adjusted for inflation.[8] The Court properly seeks to apply the inflation factor only to two-thirds of the difference. It fails in that effort by failing to remove the effects of inflation from the post-injury wage (i.e., the 12 years of inflation from 1987 to 1999). Inflation thus substantially reduces the benefit before the inflation factor is permitted to play its intended role in increasing the benefit.

[¶ 19] The Court concludes its opinion with instructions to the hearing officer as follows:

> On remand ... first determine Bernard's rate of compensation by calculating two-thirds of the difference between his unadjusted pre- and post-injury wages, and then applying the inflation factor to that compensation rate to adjust his benefits for inflation.

The difference between Bernard's "unadjusted pre- and post-injury wages" is $310.15.[9] Two-thirds of this difference is $206.77.[10] The "inflation factor" we infer from the hearing officer's opinion is 1.563.[11] Therefore, presumably, the hearing officer will award Mr. Bernard a 1999 benefit of $323.17.

[¶ 20] Removing the implicit inflation from Mr. Bernard's 1999 Harvard job produces a logical result. Had Mr. Bernard obtained his job at Harvard in 1987, we assume that he would have been paid $358.30.[12] The "difference" would have been $511.87.[13] Applying the inflation factor to two-thirds of this difference would yield a 1999 benefit of $533.33.[14]

[¶ 21] It will be observed that the hearing officer produced the same result by applying the inflation factor to the 1987 pre-injury wage and then awarding two-thirds of the difference between the equally inflation-adjusted wages. The Court scolds the hearing officer for applying the inflation factor to one of the two wages rather than to two-thirds of the difference. Unfortunately, it is the Court that permits inflation to creep into its calculations twice to the legislatively unintended detriment of the employee.[15]

I would affirm the hearing officer.

---

but should be read flexibly in some cases to meet "the demand of the statute that the hearing commissioner adjust the injured employee's compensation benefits to keep pace with statewide wage inflation (or deflation, if that should occur)."

8. In *Allen*, we also relied, in part, on *Saunders v. MacBride Dunham Mgmt.*, 1998 ME 72, ¶ 5, 708 A.2d, 1030, 1032. In *Saunders*, the employee *did not begin receiving partial benefits* for his 1990 injury until 1997. *Id.* ¶ 2, 708 A.2d at 1031. The employee argued on appeal that, although he was not entitled to an inflation adjustment for partial benefits pursuant to the law at the time of his injury, he was entitled to an "adjustment" of his post-injury wages (deflated for inflation) in order to accurately measure the difference between pre- and post-injury wages. *Id.* ¶ 5, 708 A.2d at 1032. We stated in dictum that, except in the case of varying rates compensation based on the Arnold formula, "the inflation factor [is] usually applied directly to the employee's partial benefits and [does] not affect the initial determination of earning incapacity." *Id.* We rejected the employee's contention that his post-injury wages should be deflated for inflation based on a clear legislative intent "to remove any consideration of inflation with respect to partial benefits." *Id.* ¶ 4, 708 A.2d at 1032. *Saunders*, like *Allen*, involved a statute that did not contain an inflation adjustment and is therefore distinguishable from the present case.

9.

| | |
|---|---|
| Pre-injury 1987 Wage | $870.15 |
| Post-injury 1999 Wage | $560.00 |
| Difference | $310.15 |

10. $310.15 \times \frac{2}{3} = \$206.77$.

11. $870.15 \times \text{Inflation Factor} = 1360$
Inflation Factor = 1360/870.15
Inflation Factor = 1.562948917

12. $1987 \text{ Wage} \times \text{Inflation Factor} = 560.00$
1987 Wage = 560 ÷ 1.562948917
1987 Wage = $358.30

13.

| | |
|---|---|
| Pre-injury 1987 Wage | $870.15 |
| Post–Injury 1987 Wage | $358.30 |
| Difference | $511.85 |

14. $\$511.85 \times \frac{2}{3} \times 1.562948917 = \$533.33$

**15.** Inflation first reduces the benefit because of its inclusion in the 1999 wage (i.e., the bigger the wage, the smaller the benefit) and then inflation increases the benefit when the inflation factor is applied to two-thirds of the difference.